# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1842NE

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the District of Nebraska |
| | * | |
| Ronald E. Ponec, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 23, 1998
Filed:  December 18, 1998

_____

Before RICHARD S. ARNOLD, WOLLMAN, and MORRIS SHEPPARD ARNOLD,
   Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Ronald E. Ponec was convicted on eleven counts of violating the federal bank-fraud statute, 18 U.S.C. § 1344, and sentenced to twenty-seven months in prison, the bottom of the Guidelines range.  He appeals, claiming that the conduct proved against him, conduct that he does not substantially contest, did not, even when viewed in the light most favorable to the government, amount to a violation of the statute.  He also

contends that the District Court[1] erred in declining to give him a two-point reduction for acceptance of responsibility. For the most part, we affirm. We hold, among other things, that the crime of bank fraud under 18 U.S.C. § 1344 does not require a showing that the defrauded bank suffered a financial loss.

## I.

The facts relevant to the issues raised on appeal may be briefly stated. Mr. Ponec worked for a company called Pro-Data Computer Services, Inc. A number of checks payable to the order of Pro-Data came into his possession. Defendant deposited these checks, totaling about $238,000.00, into his personal bank account at the Douglas County Bank and Trust Company. He had no authority to divert these funds into his own account. The funds ought to have been deposited in Pro-Data's account, at the same bank.

When the defendant made deposits into his own account of checks made to Pro-Data, he used blank deposit tickets, showing his personal account number. Defendant had available to him pre-printed deposit tickets showing both the account name and the number, but he did not use these when depositing Pro-Data checks into his own account. In this way, the fact that Pro-Data checks were being deposited to the credit of Ponec, rather than to the credit of Pro-Data, was made less conspicuous. The idea was that the bank tellers receiving the deposits would simply look at the deposit number and deposit the checks into the account bearing that number, not noticing that the checks were payable to Pro-Data instead of to Ronald E. Ponec, the account holder.

The indictment contained eleven counts. Counts 1 through 7 alleged, with respect to seven separate checks made out to Pro-Data, deposit of these checks in

---

[1]The Hon. William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

defendant's account in the manner we have described. Counts 8 through 11 of the indictment had to do with checks written by Mr. Ponec on this account. Each of these four counts related to a check, in each case drawn by Mr. Ponec and applied to his own personal use, rather than to the benefit of Pro-Data. The case was tried to a jury, and defendant was found guilty on all eleven counts.

Defendant argues on appeal that the indictment failed to state an offense against the United States, and that the proof similarly failed to establish an offense. Central to both points is the defendant's contention that the government did not prove that Douglas County Bank and Trust Company lost anything. Pro-Data was the victim of the crime, so far as financial loss was concerned. No funds of the bank were taken, and it was not part of the scheme that any would be. In order to consider this argument properly, we first set out the words of the statute:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice —
>
> > (1)     to defraud a financial institution; or
> >
> > (2)     to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.[2]

_____

[2]During a small portion of the time period covered by the conduct charged, a predecessor version of this statute was in effect. See Section 961(k) of the Act of August 9, 1989, Pub. L. No. 101-73, 103 Stat. 500. There are no relevant differences between the two versions of the statute. The only change has been to increase the

The words of the statute themselves convincingly refute the argument now urged by defendant. Paragraph (2) of the statute refers to a scheme to obtain monies or other property of a financial institution. Under this paragraph, some loss to the institution, or at least an attempt to cause a loss, appears to be required. The other portion of the statute, however, paragraph (1), simply prohibits "defraud[ing] a financial institution . . .." Paragraph (1) says nothing about loss to the institution, either actual or intended. So long as one has "defraud[ed]" a financial institution, one has violated the statute, whether or not loss has occurred. Otherwise, there seems to be no reason for Congress to have set out two separate ways in which bank fraud could be committed under this statute.

In fact, we have specifically so held. In United States v. Solomonson, 908 F.2d 358 (8th Cir. 1990), the defendant was charged with, among other things, directing the transfer of funds from certain corporate accounts to his personal accounts, without having the right or authority to do so. He was convicted of both mail fraud and bank fraud. On appeal, defendant argued that he could not be convicted of bank fraud because the bank in question had not suffered any financial loss. We squarely rejected this argument, saying, among other things:

> We have difficulty believing that . . . a successful scheme to defraud that does not result in financial loss to a bank is not within the conduct proscribed by section 1344. Thus, we hold that the government was not required to prove that [the bank] suffered a financial loss.

---

maximum term of imprisonment from twenty years to thirty years. See Section 2504(j) of the Act of November 29, 1990, Pub. L. No. 101-647, 104 Stat. 4861.

908 F.2d at 365.[3]

Defendant also argues that he did not make any false statement to the bank, so there could be no scheme to defraud. Williams v. United States, 458 U.S. 279 (1982), is cited for this proposition. Williams was a prosecution under 18 U.S.C. § 1014, which makes it a crime knowingly to make any false statement or report for the purpose of influencing the action of certain financial institutions. The proof showed that Williams had engaged in a check-kiting scheme. He would maintain a number of accounts in federally insured banks, would draw a check far in excess of his account balance in one bank, and would then deposit it in his account in the other, then reversing the process between his accounts. The Supreme Court held that this conduct did not violate Section 1014, because, the Court thought, a check does not amount to a factual assertion that the drawer of the check has sufficient funds on deposit to cover it. A check is simply an order to a drawee bank to make payment, in default of which the drawer of the check will be liable for the face amount. On this view, no misrepresentation, and therefore no false statement or report, is made when an insufficient-funds check is deposited.

The Supreme Court's opinion in Williams of course is binding on us, but we do not think it reaches the present case. We grant that the government needed to prove that Mr. Ponec deliberately made false representations to the bank. Otherwise, there would be no scheme or artifice to defraud. We cannot agree, however, that no misrepresentation or misstatement occurred under the facts of this case. When Mr. Ponec offered for deposit checks made to Pro-Data and specified that the deposit be made into his personal account, he was representing to the bank that the proceeds

---

[3]The case was decided under a pre-1989 version of Section 1344. Again, however, there are no material differences between the statute as it was interpreted in Solomonson and the versions of the statute that we must apply in the present case. See 908 F.2d at 364 n.4.

of the checks rightfully belonged to him, or, at least, that he had been authorized by Pro-Data to deal with the checks in this way. Neither statement was true. Had the bank known the truth, it certainly would not have wanted its tellers to put the checks into Mr. Ponec's own account. When Mr. Ponec wrote his own account number on the deposit tickets, he was falsely representing that he had the right to put these checks into his own account. We think this conduct is a scheme or artifice to defraud within the meaning of Section 1344, and that nothing in the Williams opinion, which deals only with the issue of insufficient funds, is to the contrary. Defendant points to language in Williams stating that "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' " 458 U.S. at 284. But the false assertion in the present case appeared not on the checks, but on the deposit ticket, which implicitly represented that defendant was dealing with the checks as he had a right to do. We hold, therefore, that there is no infirmity in the defendant's conviction on counts 1 through 7.

We think the case is otherwise as to the remaining counts, 8 through 11. These counts involve not the deposit of checks into the account, but the drawing of checks on defendant's personal account. The four checks alleged in these four counts total $12,897.71. The government's theory is that when the defendant wrote these checks and presented them to the bank for payment, he was falsely representing that he had a right to do so. (As to these counts, notice that defendant could be found guilty, assuming proper proof, even if the statute were interpreted to require proof of loss to the bank, because, under paragraph (2) of the statute, obtaining money owned by, or under the custody or control of, a financial institution, by means of false statements, is a crime.) Here, defendant argues that the evidence against him is insufficient for a fundamental reason: the proof did not show the source of the funds used to pay the four checks in question, beyond the fact that they were paid out of the defendant's personal account. A considerable amount of the money in that account, defendant argues, was unquestionably his own, and not Pro-Data's. Accordingly, these checks

might have been paid with defendant's own money, in which event there would have been no false representation and no improper obtaining of money.

A factual representation in the brief filed by the United States in this Court convinces us to agree with defendant's position on this point. The government's brief, page 14, admits that "[o]n two separate occasions, Ponec had a legitimate deposit to make to his own account on the same day as he intended to deposit a check made out to Pro-Data." Thus, the government has conceded that at least some of the money in the account belonged to Mr. Ponec and could legitimately be drawn on by him for personal purposes. We do not know the precise amounts, but the government had the burden of proof on this issue. We hold that this burden was not met, and that the evidence is insufficient to justify a rational conclusion that it was Pro-Data's money, and not his own, that defendant drew on when he wrote the four checks alleged in counts 8 through 11. Accordingly, the convictions on those counts must be reversed.

## II.

In view of the reversal on four of the eleven counts, the case has to go back for re-sentencing. Defendant will be entitled at least to credit for the special assessment on each of the four courts reversed. Whether his sentence would otherwise be affected, we do not know, leaving that to the District Court to decide on remand. We do think it appropriate, however, to address defendant's contention that the District Court abused its discretion in denying him a two-level reduction for acceptance of responsibility, because this issue could occur again at the time of re-sentencing. This sort of decision is highly fact-intensive, and addresses itself to the sound discretion of the District Court, which necessarily will have a much better feel of the circumstances of the case and the attitude of the defendant than we do. It is sufficient for present purposes to note that, at the time of sentencing, the defendant, though conceding that he had done the acts alleged, attempted to blame the whole thing on his wife. The

-7-

District Court could reasonably have determined that defendant did not truly accept his own responsibility for the crime.

As to counts 1 through 7, the judgment is affirmed. As to counts 8 through 11, the judgment is reversed, and the cause remanded with instructions to dismiss these counts of the indictment. In addition, the sentence imposed is vacated, and the cause remanded for re-sentencing in a manner not inconsistent with this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.