**UNITED STATES of America,
Plaintiff,**

v.

**Nikki Jane NIEMAN, Defendant.**

**No. CR 03–4023–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

May 30, 2003.

Michael M Hobart, U.S. Attorney's Office, Sioux City, IA, for U.S.

Stanley E Munger, Munger, Reinschmidt & Denne, Sioux City, IA, for Nikki Jane Nieman.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS TO DISMISS SUPERSEDING INDICTMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* .................................................1020
 A. *The Indictments* ..........................................1020
 1. *The original indictment* ..........................1020
 2. *The superseding indictment* .....................1021
 B. *Subsequent Procedural Highlights* .................1023

II. *LEGAL ANALYSIS* ...........................................1023
 A. *Intentional Delay And Prejudice* ................1024
 1. *Arguments of the parties* .......................1024
 2. *Analysis* .............................................1024
 a. *Applicable legal standards* ...............1024
 b. *Application of the standards* .............1025
 i. *Nieman's showing of "prejudice."* ......1025
 ii. *Nieman's showing of "intentional delay."* ...............1026
 c. *Summary* .....................................1027
 B. *Failure To State An Offense* .......................1027
 1. *Arguments of the parties* .......................1027
 2. *Applicable standards* ............................1027
 3. *Sufficiency of the bank fraud count* .........1029
 a. *Definition of the offense* .................1029
 b. *Sufficiency of the allegations* ............1032
 4. *Sufficiency of the embezzlement charges* ...........1034
 a. *Definition of the offense* .................1034
 b. *Sufficiency of the allegations of embezzlement* .................1036

III. *CONCLUSION* ..............................................1037

This matter, which involves charges of bank fraud and embezzlement, comes before the court pursuant to the defendant's May 23, 2003, motions (docket nos. 15 & 16) to dismiss the Superseding Indictment. The defendant contends that the Superseding Indictment fails to state offenses and that its tardy filing, on the eve of trial, constitutes intentional misconduct that has prejudiced her in the preparation of her defense.

## I. INTRODUCTION

### A. The Indictments

#### 1. The original indictment

On March 19, 2003, a grand jury handed down a three-count indictment against defendant Nikki Jane Nieman. Count 1 of the Indictment alleged that Nieman, a branch manager of Firstar Bank, also known as U.S. Bancorp, also known as U.S. Bank (Firstar), in Sioux City, Iowa, knowingly engaged in a "scheme to defraud" Firstar in violation of 18 U.S.C. § 1344. The particulars of the "execution of the scheme to defraud" were charged as follows:

3. Defendant's scheme was carried out, in part, as follows:

a. On or about March 7, 2001, defendant NIEMAN reopened her account, no. 793386244. At the time the account was reopened by defendant, it should have had a negative balance of $5,505.62.

She reopened the account with a balance of $0.00 thereby eliminating the negative balance.

b. On or about April 17, 2001, defendant NIEMAN eliminated a negative balance on account no. 793386244 in the amount of $346.46; the negative balance was caused by non-sufficient funds (NSF) checks being returned. She brought the negative balance to $0.00 on this date.

c. During August of 2001, and continuing to about September of 2001, defendant NIEMAN used her position to access the overdraft report for Firstar to change the NSF checks on her account from "Return–Charge" to "Pay–No Charge" which allowed the account to be further overdrawn and caused NSF return check fees, which should have been charged to defendant's account, to be waived by Firstar.

d. From April to July of 2001, defendant NIEMAN accessed Sheila Allen's account no. 195835640, which had a negative balance of $873.53 and reopened it with a balance of $0.00. Thereafter Allen's account was again zeroed by the defendant eliminating a negative balance of $779.41.

Indictment, Count 1, ¶ 3.

Counts 2 and 3 of the original Indictment charged separate counts of embezzlement, in violation of 18 U.S.C. § 656, as follows:

### COUNT 2

On or about the 7th day of March, 2001, in the Northern District of Iowa, defendant NIKKI JANE NIEMAN, being an employee of Firstar aka U.S. Bancorp aka U.S. Bank, with intent to defraud Firstar, an institution insured by the FDIC, did knowingly and willfully misapply and embezzle the sum of approximately $5,505.62 of the money and credits entrusted to the care of said institution and the defendant, in that the defendant reopened an account belonging to defendant and her husband, account no. 793386244, with a balance of $0:00, when at the time it actually had a negative balance of $5,505.62.

This was in violation of Title 18, United States Code, Section 656.

### COUNT 3

On or about the 17th day of April, 2001, in the Northern District of Iowa, defendant NIKKI JANE NIEMAN, being an employee of Firstar aka U.S. Bancorp aka U.S. Bank with intent to defraud Firstar, an institution insured by the FDIC, did knowingly and willfully misapply and embezzle the sum of approximately $346.46 of the money and credits entrusted to the care of said institution and the defendant, in that the defendant reopened an account belonging to defendant and her husband, account no. 793386244, with a balance of $0.00, when at the time it actually had a negative balance of $346.46.

This was in violation of Title 18, United States Code, Section 656.

Indictment, Counts 2 and 3.

Nieman was arraigned on the charges in the original Indictment on March 31, 2003. By order dated March 31, 2003, trial on the charges in the original Indictment was set to begin on June 2, 2003. However, on May 22, 2003, the United States filed a Superseding Indictment.

### 2. The superseding indictment

By letter dated May 16, 2003, the Assistant United States Attorney (AUSA) prosecuting this case notified the court and defendant's counsel that the government intended to file a Superseding Indictment. The AUSA explained the reason for the Superseding Indictment to be that, on May

15, 2003, he had discovered during an interview with witnesses from the bank that some of the language of the original Indictment needed to be changed to "clarify" the charges. The AUSA opined that no new counts had been added and that the filing of the superseding indictment would not delay trial.

On May 23, 2003, a grand jury did, indeed, hand down a Superseding Indictment in this case, again charging Nieman with one count of bank fraud and two counts of embezzlement. However, details of the charges had changed.

Count 1 of the Superseding Indictment once again alleges that Nieman "knowingly executed and attempted to execute a scheme and artifice to defraud Firstar." *See* Superseding Indictment, Count 1, ¶ 2. However, in pertinent part, at least from the standpoint of Nieman's motions to dismiss, the "execution of the scheme to defraud" portion of Count 1 had been modified in the respects shown in italics:

3. Defendant's scheme was carried out, in part, as follows:

a. On or about March 7, 2001, defendant NIEMAN reopened her account, no. 793386244. At the time the account was reopened by defendant, it had been closed because she had a negative balance of $5,505.62. Defendant Nieman reopened the account with a balance of $0.00, *without authorization, and began using the account without paying off the negative balance as required by bank policy.*

b. On or about April 17, 2001, defendant NIEMAN reopened her account, no. 793386244. At the time the account was reopened by defendant, it had been closed because she had a negative balance of $346.46. Defendant Nieman reopened the account with a balance of $0.00, *without authorization, and began using the account without paying off the*

*negative balance as required by bank policy.*

c. During August of 2001, and continuing to about September of 2001, defendant NIEMAN used her position to access the overdraft report for Firstar to change the NSF checks on her DDA accounts [sic] from "Return–Charge" to "Pay–No Charge" which allowed the account to be further overdrawn and caused NSF return check fees, which should have been charged to defendant's account, to be waived by Firstar.

d. From April to July of 2001, defendant NIEMAN, *without proper authorization, reopened* Sheila Allen's account no. 195835640, which had *been closed and charged-off by the bank because of a* negative balance of $873.53 *which brought the balance to $0.00.*

e. *From April to July of 2001, defendant NIEMAN, without proper authorization, reopened Sheila Allen's account no. 195835640, which had been closed and charged-off by the bank because of a negative balance of $779.41 which brought the balance to $0.00.*

Superseding Indictment, Count 1, ¶ 3 (emphasis added).

Counts 2 and 3, the embezzlement charges, had also been modified in the Superseding Indictment, as follows, with the modifications pertinent to Nieman's motions to dismiss again shown in italics:

## COUNT 2

On or about the 7th day of March, 2001, in the Northern District of Iowa, defendant NIKKI JANE NIEMAN, being an employee of Firstar aka U.S. Bancorp aka U.S. Bank, with intent to defraud Firstar, an institution insured by the FDIC, did knowingly and willfully misapply and embezzle the sum of approximately $5,505.62 of the money and credits entrusted to the care of said

institution and the defendant, in that the defendant, *without proper authorization,* reopened an account belonging to defendant and her husband, account no. 793386244, when, at the time, it *had been closed by the bank and charged-off because of* a negative balance of $5,505.62.

This was in violation of Title 18, United States Code, Section 656.

### COUNT 3

On or about the 17th day of April, 2001, in the Northern District of Iowa, defendant NIKKI JANE NIEMAN, being an employee of Firstar aka U.S. Bancorp aka U.S. Bank with intent to defraud Firstar, an institution insured by the FDIC, did knowingly and willfully misapply and embezzle the sum of approximately $346.46 of the money and credits entrusted to the care of said institution and the defendant, in that the defendant, *without proper authorization,* reopened an account belonging to defendant and her husband, account no. 793386244, with a balance of $0.00, when, at the time, it *had been closed by the bank and charged-off because of* a negative balance of $346.46.

This was in violation of Title 18, United States Code, Section 656.

Superseding Indictment, Counts 2 and 3 (emphasis added).

### B. Subsequent Procedural Highlights

On May 23, 2003, the court held a status conference with the parties in light of the filing of the Superseding Indictment on May 22, 2003, just eleven days before the trial was set to begin on June 2, 2003. At that status conference, the defendant notified the court that she intended to file a motion or motions to dismiss, but that she was not requesting a continuance of the trial. Immediately following that conference, the undersigned set oral arguments on the defendant's anticipated motion or motions to dismiss for May 29, 2003, and a magistrate judge set the defendant's initial appearance and arraignment on the Superseding Indictment for May 30, 2003. Ultimately, Nieman was arraigned on the Superseding Indictment on May 29, 2003, following the hearing on her motions to dismiss.

As forecast, Nieman filed two motions to dismiss the Superseding Indictment later in the day on May 23, 2003. In the first of her motions to dismiss, Nieman contends, generally, that none of the counts of the Superseding Indictment alleges conduct that could be construed to be illegal, even if the facts alleged were true. In the second of her motions to dismiss, Nieman contends that the government intentionally changed its theory of the crimes in the Superseding Indictment, on the eve of trial, which constitutes intentional misconduct that has prejudiced the preparation of her defense. The government filed its resistance to the motions to dismiss on May 28, 2003.

The court heard oral arguments on the defendant's motions to dismiss on May 29, 2003. At those oral arguments, the United States was represented by Assistant United States Attorney Michael M. Hobart, and defendant Nikki Jane Nieman was represented by attorney Stanley E. Munger. The motions to dismiss are now fully submitted.

### II. LEGAL ANALYSIS

The court deems it appropriate to consider, first, Nieman's motion seeking dismissal of the Superseding Indictment on the ground that the government intentionally filed it so late that she is prejudiced in the preparation of her defense. If necessary, the court will then turn to Nieman's contention that the Superseding Indictment should be dismissed on the ground that it fails to state an offense.

## A. Intentional Delay And Prejudice

### 1. Arguments of the parties

In her motion seeking dismissal of the Superseding Indictment on the basis of intentional delay and prejudice, Nieman contends that, far from simply "clarifying" the charges, the Superseding Indictment substantially alters them. Specifically, Nieman contends that, while the original Indictment alleged that she reopened certain accounts and "eliminated" negative balances from the bank's records, the Superseding Indictment instead alleges that she reopened certain accounts "without authorization." She argues that the activities on which the charges in both Indictments are based were brought to the government's attention by Jeff Wahl, a fraud investigator for U.S. Bank, on September 12, 2001, the original Indictment was handed down on March 19, 2003, and trial has, for some time, been set to begin on June 2, 2003. Consequently, Nieman argues that changing the government's theory on the eve of trial, after the government has had more than a year to investigate the charges and she has already prepared her defense, constitutes intentional misconduct and prejudices her. The prejudice, she contends, is that the Superseding Indictment is not merely a "technical change," but the statement of brand new theories not previously disclosed to her, prejudicing the preparation of her defense in the time remaining before trial.

In response, the government argues that the Superseding Indictment merely "clarifies" the original Indictment, but does not add any additional counts. Moreover, the government contends that Nieman's argument that the Superseding Indictment was handed down on the eve of trial is undermined by the fact that the government gave notice of its intent to seek a Superseding Indictment almost a week earlier, on May 16, 2003. The government also contends that Nieman has waived her argument concerning prejudice by failing to seek a continuance, even though the government would not have resisted a motion to continue, had Nieman made one.

### 2. Analysis

### a. Applicable legal standards

When presented with the question of whether the government has improperly delayed filing a superseding indictment, the court must ordinarily consider (1) whether the government intentionally delayed filing the superseding indictment either to gain a tactical advantage or to harass the defendant, and (2) whether the defendant is actually and substantially prejudiced by the delay. *See, e.g., United States v. Benshop,* 138 F.3d 1229, 1232–35 (8th Cir. 1998). This two-prong inquiry applies whether the challenge is to the delay between the alleged criminal activity and the issuance of the superseding indictment, *see, e.g., Benshop,* 138 F.3d at 1233 (considering delay from alleged criminal activity in 1987 through 1989 until the original indictment issued in May of 1996 and the further delay until the superseding indictment issued in July of 1996), to the delay between issuance of the original indictment and the superseding indictment, *see, e.g., United States v. Crow Dog,* 532 F.2d 1182, 1194 (8th Cir.1976) (considering a delay of almost twenty months between the filing of the original indictment and the superseding indictment), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977), or to the timing of the issuance of the superseding indictment on the eve of trial. *See, e.g., United States v. Hooten,* 933 F.2d 293, 296–97 (5th Cir.1991) (considering the defendant's complaint that the grand jury returned a superseding indictment,

which presented a new offense, just a few days before trial). However, the Eighth Circuit Court of Appeals has rejected the contention that the defendant must establish that the government intentionally delayed the filing of the superseding indictment *before* any inquiry is made into actual prejudice. *See Benshop*, 138 F.3d at 1234. Instead, "[t]he actual and substantial prejudice issue is ordinarily considered first, and the defendant's failure of proof on that issue is a sufficient ground on which to deny a motion to dismiss." *Id.*

■ As the Eighth Circuit Court of Appeals also explained, some time ago, "The standard employed in determining whether prejudice has taken place as a result of pre-indictment delay is 'whether the delay has impaired the defendant's ability to defend himself.'" *Crow Dog*, 532 F.2d at 1194 (quoting *United States v. Golden*, 436 F.2d 941, 943 (8th Cir.), *cert. denied*, 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971)). The prejudice in question ordinarily involves unavailability of a trial witness or other evidence, *see Benshop*, 138 F.3d at 1234, or other circumstances constituting unfair "surprise." *See United States v. Chenaur*, 552 F.2d 294, 302 (9th Cir.1977). There is no such prejudice, however, where, for example, at the time of the filing of the superseding indictment, the defendant has been "under indictment for a crime encompassing the same set of events" and "[a]ny defense efforts made in regard to that first indictment carried over to the second and thus negated the chance of an impaired defense." *Crow Dog*, 532 F.2d at 1194. Similarly, in *United States v. Kamerud*, 326 F.3d 1008 (8th Cir.2003), although the question was whether the trial court erred in proceeding to trial immediately following the arraignment of the defendant on the superseding indictment, instead of granting a continuance, the reviewing court concluded that, where the defendant did not request a continuance or otherwise demonstrate how his counsel was unprepared for trial, there was no prejudice requiring a continuance. *Kamerud*, 326 F.3d at 1014–15.

■ As to the "intentional delay" prong, the Fifth Circuit Court of Appeals, like the Eighth, has described the requirement as proof that the government delayed the issuance of a superseding indictment until the eve of trial "to gain a tactical advantage" over the defendant. *See Hooten*, 933 F.2d at 296–97. Such intentional delay may be found, for example, where the government was in possession of all of the facts needed to proceed with its superseding indictment for some time before trial, but waited until the eve of trial to file the superseding indictment, without valid explanation. *See United States v. Van Brandy*, 563 F.Supp. 438, 441 (S.D.Cal.1983). However, where the government adequately explains the reasons for its decision to file a superseding indictment, and the defendant fails to rebut that explanation, the defendant has not shown "intentional delay." *Hooten*, 933 F.2d at 296–97 (the government's explanation that it wished to make the theory on which the prosecution was proceeding abundantly clear by filing the superseding indictment was unrebutted); *see also United States v. Turner*, 926 F.2d 883, 889 (9th Cir.1991) (considering whether a delay in bringing a superseding indictment violates due process rights by balancing the length of the delay against the reasons for it, and deciding whether, on balance, the delay offends fundamental concepts of justice), *cert. denied*, 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).

### b. Application of the standards

■ *i. Nieman's showing of "prejudice."* Again, Nieman contends that the Superseding Indictment changed the government's theory on the eve of trial, after

the government has had more than a year to investigate the charges and she has already prepared her defense. She contends that she is prejudiced, because the Superseding Indictment involves not merely a "technical change," but the statement of brand new theories not previously disclosed to her, which has prejudiced the preparation of her defense in the time remaining before trial.

The first difficulty with Nieman's contention is that she has not sought a continuance, in light of the Superseding Indictment, nor has she articulated in what way the modifications in the Superseding Indictment have left her unprepared for trial. *See Kamerud,* 326 F.3d at 1014–15. The second difficulty is that Nieman has not shown that, because of the issuance of the Superseding Indictment, she has now lost access to evidence or witnesses that are pertinent to the reformulated charges, but were not obviously pertinent to the charges as originally formulated. *See Benshop,* 138 F.3d at 1234. To the contrary, at the time of the filing of the Superseding Indictment, Nieman had been "under indictment for a crime encompassing the same set of events" for three months, and she has not shown that "[a]ny defense efforts made in regard to that first indictment" would *not* "carr[y] over to the second," and "thus negat[e] the chance of an impaired defense." *Crow Dog,* 532 F.2d at 1194. The court is not convinced that a change from statement of the offenses in terms of reopening accounts and "eliminating" negative balances, in the original Indictment, to statement of the offenses in the Superseding Indictment in terms of reopening accounts "without authorization," where those accounts had been closed with negative balances, constitutes such a dramatic change in factual basis or theory that Nieman's "defense efforts made in regard to that first indictment" would not "carry over" to the Superseding Indictment. Indeed, Nieman's

counsel claimed that the defense had always been aware that Nieman was not responsible for closing the accounts or eliminating the negative balances and had always taken the position that merely reopening the accounts was not illegal. Thus, Nieman cannot realistically claim that she was "surprised" by the changes in the Superseding Indictment. *See Chenaur,* 552 F.2d at 302 (unfair "surprise" may constitute prejudice from pre-indictment delay).

Because the court concludes that Nieman cannot show the necessary "prejudice," the court need not consider the "intentional delay" prong of the inquiry. *See Benshop,* 138 F.3d at 1234. Nevertheless, in an abundance of caution, the court will also consider the "intentional delay" prong.

■ *ii. Nieman's showing of "intentional delay."* Nieman appears to rely on the fact that the government had ample time to investigate the charges before filing the first indictment, the fact that the Superseding Indictment purportedly changed the theory of the offenses, and the fact that the Superseding Indictment was filed only shortly before trial, to demonstrate that the delay in issuing the Superseding Indictment was intentional. The court agrees that an inference of "intentional delay" may arise from such circumstances. *See Van Brandy,* 563 F.Supp. at 441. However, any such inference fades in the face of the court's finding, just above, that there is no demonstrable change in the theory of the case, or at least, no change of such magnitude that Nieman's "defense efforts made in regard to that first indictment" would not "carry over" to the Superseding Indictment. *Cf. Crow Dog,* 532 F.2d at 1194. More importantly, any such inference fades in the face of the government's explanation that the Superseding Indictment was prompted by pre-trial interviews with witnesses and a desire to "clarify" the misconduct at issue

in the counts. *See Hooten*, 933 F.2d at 296–97 (the government's explanation that it wished to make the theory on which the prosecution was proceeding abundantly clear by filing the superseding indictment was unrebutted); *accord Turner*, 926 F.2d at 889 (also balancing the delay against the reasons for it). Although the government's delay may have been negligent, the court ultimately concludes that it was not the result of an intent to gain a tactical advantage over the defendant or to harass her. *See United States v. Gregory*, 322 F.3d 1157, 1165 (9th Cir.2003) (where the delay results from the government's negligence, rather than an intent to delay, the defendant's showing of prejudice must be greater); *see generally Benshop*, 138 F.3d at 1232–35 (formulating the "intentional delay" prong in terms of an intent to gain a tactical advantage or to harass the defendant); *Hooten*, 933 F.2d at 296–97 (same).

#### c. *Summary*

The court finds that Nieman has failed to establish either the "prejudice" or "intentional delay" requirements for dismissal of the Superseding Indictment for pre-indictment delay. Therefore, Nieman's motion seeking dismissal of the Superseding Indictment on this ground (docket no. 16) will be denied.

### B. *Failure To State An Offense*

#### 1. *Arguments of the parties*

In her other motion to dismiss the Superseding Indictment (docket no. 15), Nieman asserts that none of the counts of the Superseding Indictment alleges anything that could be construed as illegal, even if the facts were true. More specifically, as to Count 1, and still more specifically, as to paragraphs 3(a), 3(b), 3(d), and 3(e), Nieman contends that merely opening an account in violation of the bank's policies is not evidence of a scheme to defraud the bank, since there is no allegation of any loss to the bank as a consequence of the reopening of the accounts. Likewise, Nieman contends that Count 2 is "nonsensical," because, even if it were true that Nieman reopened an account after the bank had charged off the negative balance of $5,505.62, opening the account would have no causal relationship to embezzling the $5,505.62. Similarly, because Count 3 makes clear that the bank had already charged off a negative balance of $346.46, reopening the account would have absolutely no causal effect on the bank losing $346.46.

In response, the government argues that the Superseding Indictment both states the elements of the offenses charged and enables Nieman to plead acquittal or conviction as bars to future prosecutions for the same offenses. Somewhat more specifically, the government contends that it does not have to prove loss or intent to permanently deprive the bank of its property to establish bank fraud under 18 U.S.C. § 1344 or embezzlement under 18 U.S.C. § 656. The government also contends that the bank fraud statute must be broadly construed, such that neither Nieman's contention that her motives were to avoid financial ruin, nor her contention that the government must prove reasonable reliance by the bank, has any merit. What is central to the charge, the government contends, is an intent to defraud a federally chartered or insured institution. The government also argues that, as to both the scheme to defraud and the embezzling charges, there is no difference between "eliminating" a negative balance and reopening an account with a zero balance, as an accounting measure, before the pre-existing negative balance was paid off. Nieman's conduct, the government contends, is cognizable as fraud and embezzlement.

#### 2. *Applicable standards*

This court recently considered the standards applicable to a motion to

dismiss an indictment for failure to state an offense in *United States v. Johnson*, 225 F.Supp.2d 1009 (N.D.Iowa 2002):

As the Eighth Circuit Court of Appeals recently explained,

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the *offense* charged." (emphasis added). The indictment "shall state the *statute, rule, regulation* or other provision of law which the defendant is alleged therein to have *violated.*" *Id.* (emphasis added). An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *See United States v. Wessels*, 12 F.3d 746, 750 (8th Cir.1993) (citing *United States v. Young*, 618 F.2d 1281, 1286 (8th Cir.1980)).

*United States v. Carter*, 270 F.3d 731, 736 (8th Cir.2001) (emphasis in the original); *United States v. Olson*, 262 F.3d 795, 799 (8th Cir.2001) ("To be sufficient, an indictment must 'contain[ ] the elements of the offense charged.' *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see* FED. R. CRIM. P. 7(c)(1)."); *United States v. White*, 241 F.3d 1015, 1021 (8th Cir.2001) ("We will consider an indictment sufficient 'if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution.'") (quoting *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir.1988)). Similarly,

Usage of a particular word or phrase in the indictment is not required as long as we can recognize a valid offense and the form of the allegation "substantially states the element[s]." [*Mallen*, 843 F.2d at 1102.] In fact, we will find an indictment insufficient only if an "essential element 'of substance' is omitted." *Id.* (citation omitted).

*White*, 241 F.3d at 1021. Although no particular words or phrases are necessarily required, "[i]t is well-established in this circuit that citation of the statute, without more, does not cure the omission of an essential element of the charge because bare citation of the statute 'is of scant help in deciding whether the grand jury considered' the missing element in charging the defendant." *Olson*, 262 F.3d at 799 (quoting *United States v. Camp*, 541 F.2d 737, 740 (8th Cir.1976), and also citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988)).

*Johnson*, 225 F.Supp.2d at 1015–16 (footnote omitted).[1] These standards do not

---

1. In *Johnson*, this court also made the following observation:

As the court also explained in *Carter*, "Although the sufficiency of an indictment is a jurisdictional issue which may be considered at any time, Fed.R.Crim.P. 12(b)(2), when an indictment is challenged for the first time after a verdict, it will be liberally construed in favor of sufficiency." *Carter*, 270 F.3d at 736. In those circumstances, "absent prejudice," the indictment will

stand, "unless the indictment cannot, within reason, be construed to charge a crime." *Id.; Olson*, 262 F.3d at 799 (clarifying that "when the sufficiency of an indictment is challenged after jeopardy attaches, ... we liberally construe the indictment, finding it sufficient 'unless it is so defective that by no reasonable construction can it be said to charge the offense for which the defendants were convicted'") (quoting *United States v. Just*, 74 F.3d 902, 904 (8th Cir.1996)); *White*, 241 F.3d at 1021 (explaining that

appear to require amplification here. Rather, in light of these standards, the questions are, first, how do the statutes and case law define the offenses charged in each count of the Superseding Indictment, and, second, do the counts of the Superseding Indictment adequately allege the offenses, as defined?

### 3. Sufficiency of the bank fraud count

#### a. Definition of the offense

Count 1 of the Superseding Indictment alleges a "scheme to defraud" Firstar Bank in violation of 18 U.S.C. § 1344. Section 1344, in turn, defines the offense of "bank fraud" as follows:

> § 1344. Bank fraud
>
> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Thus, "[f]or [a defendant] to be convicted of bank fraud under § 1344, the government ha[s] to prove that he knowingly executed or attempted to execute a scheme to defraud a financial institution [*i.e.*, a § 1344(1) offense] or to obtain any money, funds, or credits by false or fraudulent pretenses [*i.e.*, a § 1344(2) offense]." *United States v. Jen-*

*kins,* 210 F.3d 884, 886 (8th Cir.2000) (citing § 1344).

In *United States v. Whitehead,* 176 F.3d 1030 (8th Cir.1999), the Eighth Circuit Court of Appeals reiterated its prior conclusions that "[t]he government need not prove loss to show that a defendant committed bank fraud under § 1344." *Whitehead,* 176 F.3d at 1041 (citing *Ponec, infra*). As the Eighth Circuit Court of Appeals had previously explained in *United States v. Ponec,* 163 F.3d 486 (8th Cir. 1998),

> Paragraph (2) of the statute refers to a scheme to obtain monies or other property of a financial institution. Under this paragraph, some loss to the institution, or at least an attempt to cause a loss, appears to be required. The other portion of the statute, however, paragraph (1), simply prohibits "defraud[ing] a financial institution...." Paragraph (1) says nothing about loss to the institution, either actual or intended. So long as one has "defraud[ed]" a financial institution, one has violated the statute, whether or not loss has occurred. Otherwise, there seems to be no reason for Congress to have set out two separate ways in which bank fraud could be committed under this statute.
>
> In fact, we have specifically so held. In *United States v. Solomonson,* 908 F.2d 358 (8th Cir.1990), the defendant was charged with, among other things, directing the transfer of funds from certain corporate accounts to his personal accounts, without having the right or authority to do so. He was convicted of

"we apply a more deferential standard of review" when an indictment is not challenged until after jeopardy attaches, identifying that "more deferential standard" in essentially the same terms as are used in *Carter* and *Olson*). However, Johnson's challenge to the sufficiency of the indictment has been made prior to trial, so that

the indictment is not entitled to either liberal construction or deference.
*Johnson,* 225 F.Supp.2d at 1015 n. 4. Similarly, here, Nieman's challenge is made prior to trial, so that the Superseding Indictment in this case also is not entitled to either liberal construction or deference.

both mail fraud and bank fraud. On appeal, defendant argued that he could not be convicted of bank fraud because the bank in question had not suffered any financial loss. We squarely rejected this argument, saying, among other things:

> We have difficulty believing that . . . a successful scheme to defraud that does not result in financial loss to a bank is not within the conduct proscribed by section 1344. Thus, we hold that the government was not required to prove that [the bank] suffered a financial loss.

908 F.2d at 365.

*Ponec,* 163 F.3d at 488. Recently, when confronted with a defendant's contention that "reliance" is a required element of a violation of § 1344, the Eighth Circuit Court of Appeals "question[ed] whether reliance is required to prove § 1344 . . . violations." *See Jenkins,* 210 F.3d at 887. The court found it unnecessary to resolve that question; instead, assuming "for the sake of argument" that "reliance" was an element, the court found sufficient evidence of "reliance" on the record in that case. *Id.* Although this court concludes that *United States v. Anderson,* 447 F.2d 833, 836 (8th Cir.1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972), does *not* resolve this issue, as the government contends, the court notes that "reliance" is mentioned nowhere in the statute defining the offense, nor is "reliance" part of a "scheme or artifice to defraud," as that phrase is defined below. Moreover, the Supreme Court recently stated flatly that "[t]he common-law requirements of 'justifiable reliance' and 'damages,' . . . plainly have no place in the federal fraud statutes." *Neder v. United States,* 527 U.S. 1, 24–25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

 While neither proof of loss to the victim institution nor reliance is required, the Eighth Circuit Court of Appeals has explained that proof of an offense as defined by § 1344 "requires evidence that the defendant intended to defraud the victim financial institution." *Whitehead,* 176 F.3d at 1041 (citing *United States v. Clapp,* 46 F.3d 795, 803 (8th Cir.1995), and *United States v. Stavroulakis,* 952 F.2d 686, 694 (2d Cir.), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992)). Indeed, the Eighth Circuit Court of Appeals has stated that, in order to *prove* bank fraud, the government must prove the following elements: (1) the defendant knowingly executed a scheme and artifice to defraud the financial institution; (2) the defendant did so with the intent to defraud; and (3) the institution was insured by the FDIC. *Whitehead,* 176 F.3d at 1037 n. 2 (quoting with approval the district court's "elements" instruction); *see also* 8th Cir. Model Jury Instructions: Criminal, 6.18.1344 (mirroring the statement of the elements in *Whitehead* ).

At the oral arguments on the defendant's motions to dismiss the Superseding Indictment, this court expressed some doubt that the language of Count 1 was sufficient, because it did not separately or expressly allege any "intent to defraud," even though it tracks the statutory language by alleging that Nieman "knowingly executed and attempted to execute a scheme and artifice to defraud Firstar." Superseding Indictment, Count 1, ¶ 2; *and compare* 18 U.S.C. § 1344(1) (defining the offense as "knowingly execut[ing], or attempt[ing] to execute, a scheme or artifice . . . to defraud a financial institution"). The government contended that it had adequately alleged "intent to defraud" by alleging Nieman's illegal conduct in this way. The court finds that the decision of the Eighth Circuit Court of Appeals in *Whitehead* is illuminating on this issue.

The court in *Whitehead* quoted with approval the district court's instruction defining "scheme or artifice to defraud," for purposes of the first element of the offense, which stated the following:

> The phrase "scheme or artifice to defraud" means a deliberate plan of action or course of conduct by which someone intends to deceive or to cheat another or by which someone intends to deprive another of something of value. The government must show that some actual harm or injury was contemplated by the defendant.
>
> It is not necessary for the government to prove that anyone lost any money or property as a result of the scheme or plan to defraud.

*Whitehead,* 176 F.3d at 1037; *see also* 8th Cir. Model Jury Instructions: Criminal, 6.18.1344 (defining "scheme to defraud" as stated in the first paragraph of the instruction quoted in *Whitehead*). This court believes that it is plain from the analysis of the sufficiency of this instruction in *Whitehead* that "intent to defraud" is less a *separate* element of a bank fraud offense than it is a necessary element to prove that the defendant "knowingly execute[d], or attempt[ed] to execute, a scheme or artifice . . . to defraud," which is actually the statutory requirement for proof of the offense. *See* 18 U.S.C. § 1344. The court in *Whitehead* rejected the contention that, in order to prove "contemplation of harm or injury," evidence independent of the scheme itself must be offered; instead, the court in *Whitehead* held that "[t]he scheme itself often serves as evidence of a defendant's intent to defraud." *Id.* at 1038.

The court then indicated that a showing of "a scheme to defraud" is, "in other words," a showing of "intent to cause harm." *Id.* However, where there is insufficient evidence of both a scheme to defraud and *actual* harm, the government "shoulder[s] an additional burden of providing evidence independent of the alleged scheme to show an intent to defraud." *Id.* (distinguishing *United States v. Jain,* 93 F.3d 436, (8th Cir.1996), *cert. denied,* 520 U.S. 1273, 117 S.Ct. 2452, 138 L.Ed.2d 210 (1997), from the circumstances then before the court, which involved actual harm). In short, "intent to defraud," in the sense of intent to deceive and contemplation of harm, is an element of the statutory requirement that the defendant "knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud." *See* 18 U.S.C. § 1344.[2] Thus, the court is now of the view that the essential element of the bank fraud offense is knowing execution, or attempt to execute, a scheme or artifice to defraud, which *encompasses and requires* proof of an "intent to defraud."[3]

Similarly, the Seventh Circuit Court of Appeals recently upheld the sufficiency of an indictment for bank fraud, recognizing that "Section 1344(1) prohibits any 'recognizable scheme formed with the intent to defraud.'" *United States v. Yoon,* 128 F.3d 515, 522 (7th Cir.1997) (quoting *United States v. LeDonne,* 21 F.3d 1418, 1425 (7th Cir.), *cert. denied,* 513 U.S. 1020, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994)). The court then concluded that an indictment for bank fraud would be adequate where it alleged "(1) that *[the defendant]* (2) know-

---

**2.** In *Whitehead,* the court also held that evidence of the bank's "consent" to the conduct on which the charge relies is also evidence that the jury may consider in deciding the issue of the defendant's intent to defraud. *Whitehead,* 176 F.3d at 1041.

**3.** As to proof of "intent to defraud," the Eighth Circuit Court of Appeals has concluded that "[i]ntent to defraud need not be shown by direct evidence; rather, it may be inferred from all the facts and circumstances surrounding the defendant's actions." *United States v. Swinton,* 75 F.3d 374, 380 (8th Cir. 1996).

*ingly* (3) engaged in ·a *scheme to defraud* the ban[k]." *Id.* (emphasis in the original). The court did not separately consider whether the indictment alleged "intent to defraud." *Id.* Instead, the court found that it was difficult to distinguish between the defendant's arguments about the sufficiency of the indictment and the sufficiency of the evidence:

> The government is correct that the indictment is not the vehicle by which it was required to prove Mrs. Yoon's state of mind beyond a reasonable doubt. The indictment only must sufficiently allege the elements of the § 1344(1) offense, one of which is that Mrs. Yoon acted with knowledge of the scheme to defraud. Having concluded that the indictment does indeed sufficiently allege all the elements of the offense, we move on to the sufficiency of the evidence argument.

*Yoon,* 128 F.3d at 523. Thus, under *Yoon,* where the indictment adequately alleges knowingly executing or attempt to execute a scheme to defraud, the court need not separately consider whether the indictment alleges "intent to defraud."

Returning to precedent of this circuit concerning the "scheme to defraud" element of a bank fraud offense, in *Ponec,* the Eighth Circuit Court of ·Appeals considered the defendant's argument that, if he did not make any false statement to the bank, there could be no "scheme to defraud." *Ponec,* 163 F.3d at 488. The court agreed that the government must prove that the defendant deliberately made false representations to the bank to establish a scheme or artifice to defraud. *Id.* at 489. The court then held that the defendant had made such false representations by making deposits of corporate checks into his personal account, thereby representing to the bank that the proceeds of the checks rightfully belonged to him or that he was authorized by the corporation to treat checks in this way, when neither

representation was true, so that his conduct constituted a scheme or artifice to defraud within the meaning of § 1344. *Id.* at 489.

As to the third element defined in *Whitehead,* which requires proof that the institution was insured by the FDIC, *see Whitehead,* 176 F.3d at 1037 n. 2, a "financial institution" for purposes of § 1344 is defined in 18 U.S.C. § 20(1) as "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)." 18 U.S.C. § 20(1). Thus, the bank fraud statute requires proof that the institution was insured by the FDIC at the time the fraud was committed. *United States v. Lewis,* 260 F.3d 855 (8th Cir. 2001), *cert. denied,* 534 U.S. 1154, 122 S.Ct. 1122, 151 L.Ed.2d 1015 (2002); *see also id.* at 856 (Bye, J., dissenting) (agreeing with the majority that "[p]roof of federal insurance is an essential element of the offense," but rejecting the majority's conclusion that the evidence was sufficient to prove that element as of the time of the alleged fraud).

#### b. Sufficiency of the allegations

 · Here, Count 1 of the Superseding Indictment does identify the statute that Nieman has allegedly violated, 18 U.S.C. § 1344, as required by Rule 7(c)(1) of the Federal Rules of Criminal Procedure. *See Johnson,* 225· F.Supp.2d at 1015. Thus, whether Count·1 of the Superseding Indictment states an offense of bank fraud depends principally·upon whether " 'on its face ... it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which [Nieman] must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.' " *Johnson,* 225 F.Supp.2d at 1015 (quoting *Carter,* 270 F.3d at 736). Although the government

focused on the second and third requirements in its defense of the sufficiency of Count 1 of the Superseding Indictment, the court focuses, initially, on the first, whether the indictment sufficiently states the essential elements of the offense charged. The court concludes that Count 1 *does* meet this requirement.

The elements that must be *proved* to convict a defendant of a bank fraud offense are, again, according to the decision in *Whitehead*, (1) that the defendant knowingly executed a scheme and artifice to defraud the financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the institution was insured by the FDIC. *Whitehead*, 176 F.3d at 1037 n. 2 (quoting with approval the district court's "elements" instruction); *see also* 8th Cir. Model Jury Instructions: Criminal, 6.18.1344 (mirroring the statement of the elements in *Whitehead*). However, this court has concluded that *Whitehead*, *Yoon*, and § 1344 itself suggest that "intent to defraud" is not a *separate* element, but is an element of proof encompassed in "knowingly execut[ing], or attempt[ing] to execute, a scheme or artifice ... to defraud." *See* 18 U.S.C. § 1344.

As to the elements that Count 1 of the Superseding Indictment must properly state, Count 1 does, indeed, allege that "Firstar's accounts were insured by the Federal Deposit Insurance Corporation (FDIC)." *See* Superseding Indictment, Count 1, ¶ 1(a); *see Whitehead*, 176 F.3d at 1037 n. 2 (third element). Count 1 also does, indeed, allege in paragraph 2 that Nieman "knowingly executed and attempted to execute a scheme and artifice to defraud Firstar," and in paragraph 3, alleges the specifics of the scheme or artifice to defraud Firstar. *See Whitehead*, 176 F.3d at 1037 n. 2 (first essential element); *see also Yoon*, 128 F.3d at 522–23 (finding allegations of the way in which the scheme

allegedly worked sufficient). The fact that those paragraphs *do not* expressly allege that reopening the overdrawn accounts with "zero" balances, without authorization, *was intended to defraud Firstar* does not appear to be fatal. Indeed, a reasonable inference from the allegations concerning the "execution of the scheme to defraud" is an intent to deceive Firstar into believing that the accounts did not have negative balances, that the negative balances had been cured, or that checks could be drawn against those accounts. *See Whitehead*, 176 F.3d at 1037 (explaining that the phrase "scheme or artifice to defraud" means "a deliberate plan of action or course of conduct by which someone intends to deceive or to cheat another or by which someone intends to deprive another of something of value"); *see also* 8th Cir. Model Jury Instructions: Criminal, 6.18.1344 (defining elements as including a "scheme to defraud" and "intent to defraud" and defining a "scheme to defraud" as stated in the first paragraph of the instruction quoted in *Whitehead*).

The court is also unpersuaded by Nieman's argument that, even if true, the allegations of Count 1 fail to state a bank fraud offense. In *United States v. Johnson*, 169 F.3d 569 (8th Cir.1999), the Eighth Circuit Court of Appeals concluded that there was sufficient evidence to convict a defendant of bank fraud in violation of § 1344 where the government demonstrated that the defendant knew that his accomplice at the credit union had been told by the credit union's board of directors not to extend further credit to the defendant, and that the defendant caused false entries to appear on his monthly account statements by depositing worthless checks to show a positive balance, then debiting the checks the next month creating an ever-growing overdraft hidden from credit union officials. *Johnson*, 169 F.3d at 572. The allegations in the Superseding Indictment here are compara-

ble, in that Count 1 alleges that Nieman knew that it was against Firstar's policy for an employee to conduct a transaction on his or her account or to open such an account that had been closed for insufficient funds, without authorization, but that she reopened her own and another employee's closed accounts, in effect "hiding" the negative balances or taking advantage of the fact that they had been "charged off" to conduct further business through the accounts.

Thus, Count 1 does adequately allege the elements of the offense.

On the other hand, as the Eighth Circuit Court of Appeals has made clear, Nieman's specific challenge, which is that Count 1 of the Superseding Indictment does not allege that the bank lost anything as a result of Nieman's alleged scheme to defraud, is without merit. *Whitehead,* 176 F.3d at 1041 ("The government need not prove loss to show that a defendant committed bank fraud under § 1344."). Similarly unavailing is any contention by Nieman that the indictment must allege "reliance," because "reliance" is not an element of a bank fraud offense. *See Neder,* 527 U.S. at 24–25, 119 S.Ct. 1827 ("The common-law requirements of 'justifiable reliance' and 'damages,' . . . plainly have no place in the federal fraud statutes."). Thus, Nieman's argument that "loss" and "reliance" elements are missing from Count 1 of the Superseding Indictment is of no consequence.

Moreover, because Count 1 of the Superseding Indictment does adequately allege the elements of bank fraud, and the conduct on which the charges are based, it also " 'fairly informs [Nieman] of the charges against which [she] must defend,' " and does "alleg[e] sufficient information to allow a defendant to plead a conviction or acquittal as à bar to a subsequent prosecution." *Johnson,* 225 F.Supp.2d at 1015 (quoting *Carter,* 270 F.3d at 736). Thus,

the further criteria for the sufficiency of an indictment are met in this case as to Count 1 of the Superseding Indictment.

Therefore, Nieman's motion to dismiss the Superseding Indictment for failure to state an offense will be denied as to Count 1.

### 4. Sufficiency of the embezzlement charges

Nieman also contends that the Superseding Indictment does not adequately allege any "embezzlement," as that offense is defined in 18 U.S.C. § 656. Nieman contends that allegations that she reopened overdrawn and charged-off accounts, without authorization, do not constitute misapplication or embezzlement of the bank's funds, because there is no causal connection between her conduct and any loss to the bank.

### a. Definition of the offense

Section 656 of Title 18 defines the embezzlement charges at issue here as follows:

§ 656. Theft, embezzlement, or misapplication by bank officer or employee

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization

or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 656.

■■■ The Eighth Circuit Court of Appeals has not recently revisited the elements of embezzlement in violation of § 656. However, the Eighth Circuit Model Jury Instructions define the elements of an embezzling offense in violation of § 656 as follows:

> *One,* the defendant was (describe position and name of bank, e.g., a trust officer at First National Bank);
>
> *Two,* the defendant [embezzled] [misapplied] the [funds] [credits] of the bank;
>
> *Three,* the amount so [embezzled] [misapplied] was more than $100.00;
>
> *Four,* the defendant did so with the intent [to injure] [to defraud] the bank; and
>
> *Five,* the bank was (describe federal relation, e.g., insured by the FDIC).

8th Cir. Model Jury Instructions: Criminal, 6.18.656. The court agrees that these elements are fairly drawn from the statute defining the offense. The elements of embezzlement may ultimately be proved by circumstantial evidence. *United States v. Wade,* 111 F.3d 602, 604 (8th Cir.1997).

Nieman appears to challenge the sufficiency of the embezzlement charges in the Superseding Indictment on the basis that they do not adequately allege anything constituting "embezzlement" or "misapplication." The Eighth Circuit Model Instruction for this offense defines "embezzlement" as follows:

> "Embezzlement" means the voluntary and intentional taking, or conversion to one's own use, of the property of another, which property came into the defendant's possession lawfully, by virtue of some office, employment, or position of trust which the defendant held.

8th Cir. Model Jury Instructions: Criminal, 6.18.656. The Eighth Circuit Model Instruction for this offense also defines "misapplication" as follows:

> "Misapplication" means the unauthorized, or unjustifiable or wrongful use of a bank's funds. Misapplication includes the wrongful taking or use of money of the bank by a bank officer or employee for his own benefit or for the use and benefit of some other person.

*Id.* Similarly, the Eighth Circuit Court of Appeals has explained that

> "Misapplication" under 18 U.S.C. § 656 covers unauthorized and improper conduct, typically conversion of bank funds for personal use by a bank officer or a third party. Violation of state law or bank policy may indicate such misapplication.

*United States v. Mohr,* 728 F.2d 1132, 1134 (8th Cir.1984), *cert. denied,* 469 U.S. 843, 105 S.Ct. 148, 83 L.Ed.2d 87 (1984).[4]

---

**4.** The Eighth Circuit Court of Appeals "has not explicitly determined whether § 656 requires 'evidence that "bank funds were misapplied by virtue of the fact the defendant was connected in some capacity with a bank which enable[d] him to gain access to bank funds." ' " *United States v. Darrah,* 119 F.3d 1322, 1327 (8th Cir.1997) (quoting *United States v. Marx,* 991 F.2d 1369, 1372 (8th Cir.), *cert. denied,* 510 U.S. 1018, 114 S.Ct. 618, 126 L.Ed.2d 582 (1993), in turn quoting *United States v. Dreitzler,* 577 F.2d 539, 547 (9th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct.

 Finally, "[i]ntent to defraud or injure the bank is an essential element of the crime of misapplication of bank funds." *United States v. Ness*, 665 F.2d 248, 249 (8th Cir.1981). The Eighth Circuit Model Instruction for this offense defines "intent to defraud or injure" as follows:

[To act with "intent to injure" means to act with intent to cause pecuniary loss.] [To act with "intent to defraud" means to act with intent to deceive or cheat, for the purpose of causing a financial loss to someone else or bringing about a financial gain to defendant or another.]

8th Cir. Model Jury Instructions: Criminal, 6.18.656.

### b. *Sufficiency of the allegations of embezzlement*

 The court notes that, unlike the bank fraud count, the embezzlement counts both expressly allege that Nieman engaged in the conduct alleged "with intent to defraud Firstar." *See* Superseding Indictment, Counts 1 & 2. Thus, this "essential element" of embezzlement, *see Ness*, 665 F.2d at 249, is sufficiently alleged in the embezzlement counts. However, the court agrees with Nieman that the embezzlement counts do not sufficiently allege any conduct that is legally cognizable as "embezzlement" or "misapplication." Allegations that the defendant reopened accounts that had been overdrawn, but had allegedly already been

closed and the negative balances "charged off," even if the defendant was not authorized to do so and even if she could do so only by virtue of her position with the bank, does not allege "the voluntary and intentional taking, or conversion to one's own use, of the property of another." *See* 8th Cir. Model Jury Instructions: Criminal, 6.18.656 (definition of "embezzlement"). Indeed, these allegations do not allege the taking or conversion of any property at all, let alone the property of another for one's own use. Even assuming that the "property" that the government believes was "taken" or "converted" was the negative balance of $5,505.62, in Count 2, or $346.46, in Count 3, such "taking" or "conversion" did *not* occur with the *reopening* of the accounts, where the Superseding Indictment itself alleges that those negative balances had *already* been "charged off." Nor do these counts allege "misapplication" of funds, because, again, they do not allege any "unauthorized, or unjustifiable or wrongful use of a bank's funds" or any "taking or use of money of the bank by a bank officer or employee for his own benefit or for the use and benefit of some other person." *See* 8th Cir. Model Jury Instructions: Criminal, 6.18.656 (definition of "embezzlement").[5] It is possible that writing non-sufficient fund checks on the reopened accounts could constitute "embezzlement" or "misapplication," but that is not what Counts 2 and 3 of the Supersed-

---

1246, 59 L.Ed.2d 473 (1979)). However, that issue is not presented in Nieman's motions to dismiss.

**5.** In contrast, the original Indictment's allegations that Nieman "reopened" accounts "with a balance of $0.00, when at the time [each account] actually had a negative balance" *see* Indictment, Counts 2 and 3, probably did allege conduct that constitutes either "embezzlement" or "misapplication," because those

allegations were that it was Nieman's conduct that eliminated the negative balances, thereby depriving the bank of sums due, to Nieman's benefit. However, the government acknowledged at oral arguments that its further investigations had indicated that those allegations did not accord with the facts, because the elimination of the negative balances on the accounts was actually the result of computer accounting activity to close the overdrawn accounts, not any action by Nieman.

ing Indictment allege was the wrongful conduct.

Therefore, the court agrees with Nieman that the embezzlement counts of the Superseding Indictment do not state offenses and must be dismissed.

### III. CONCLUSION

Upon the foregoing, the court concludes that

1. Defendant Nieman's first motion to dismiss, filed May 23, 2003 (docket no. 15), which seeks dismissal of the Superseding Indictment on the ground that it is insufficient to state offenses, is **granted in part and denied in part**, as follows:

a. The motion is **denied** as to Count 1; but

b. **granted** as to Counts 2 and 3.

Counts 2 and 3 of the Superseding Indictment are, therefore, **dismissed**.

2. Defendant Nieman's second motion to dismiss, filed May 23, 2003 (docket no. 16), which seeks dismissal of the Superseding Indictment on the basis of pre-indictment delay, is **denied** in its entirety.

**IT IS SO ORDERED.**