# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-2586

_____

United States of America,      *

                              *

       Appellee,      *

                              *

   v.             *

                              *

Jay Charles Wantland,      *

                              *

       Appellant.      *

                              *

           _____         *  Appeals from the United States

                              *  District Court for the Western

       No. 04-2947         *  District of Missouri

           _____         *

                              *       [UNPUBLISHED]

United States of America,      *

                              *

       Appellee,      *

                              *

   v.             *

                              *

Suzanne Keisling,      *

                              *

       Appellant.      *

_____

Submitted: April 13, 2005
Filed: June 9, 2005

_____

Before COLLOTON, McMILLIAN, and BENTON, Circuit Judges.

———————

PER CURIAM.

A jury convicted Jay Charles Wantland and Suzanne M. Keisling of bank fraud in violation of 18 U.S.C. §§ 1344 and 2. Wantland was also convicted of credit-card fraud in violation of 15 U.S.C. § 1644 and 18 U.S.C. § 2. The district court[1] sentenced Wantland to 57 months, and Keisling to 21 months. Wantland appeals only his bank-fraud conviction, claiming insufficient evidence.[2] Keisling appeals both her conviction, also claiming insufficient evidence, and her sentence, asserting a Sixth Amendment violation. Jurisdiction being proper under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court affirms.

In early 1998, Wantland hired Keisling as a project manager for his residential construction company, B-Builders. Later that year, the two formed C-Builders to handle financing, while B-Builders would perform the actual construction work. Keisling, as president and CEO of C-Builders, took care of all accounting, paying all invoices, and controlling the funds for the company. Wantland managed the actual construction. C-Builders was supposed to pay B-Builders for work on the houses.

To fund the companies, Wantland and Keisling obtained two residential construction loans from Clayco State Bank. The loans were also personally guaranteed by Keisling's brother and sister-in-law. As standard in the construction industry, proceeds of the loans are released only upon presentation of proof – typically an invoice – that the builder spent funds on the project. Several months into

———————

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]Wantland's Motion to Dismiss issues II and III of his appeal, concerning sentencing, is granted.

-2-

construction, the bank discovered the invoices from C-Builders were fabricated or altered, representing work not actually done. Also, several checks written by C-Builders for subcontractor work purportedly done by B-Builders were never cashed. Thus, the bank was reimbursing C-Builders for funds it never actually paid. In fact, upon final disbursement of the loans, neither house was complete.

Notified by the bank of these problems, Wantland and Keisling fled the Kansas City area, without telling the bank, friends, or even family. In September 2003, they were arrested in Ohio, living under false aliases.

A jury found both Wantland and Keisling guilty of violating 18 U.S.C. § 1344:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice -- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The government submited its case on both types of fraud: 1) defrauding and 2) obtaining money by false or fraudulent representations.

On appeal, Wantland and Keisling each claim the evidence failed to prove bank fraud. This court reverses for insufficient evidence if, after viewing the evidence most favorably to the prosecution, no reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Lam*, 338 F.3d 868, 871 (8th Cir. 2003) (citations omitted).

Wantland claims that the evidence at trial was insufficient because he never personally altered any invoices or company checks submitted to the bank, nor directed their alteration or submission to the bank. True, the evidence did not prove

Wantland *personally* altered or submitted any of the invoices or checks. However, it did show Wantland was guilty of bank fraud under an aiding and abetting theory – 18 U.S.C. § 2. "To convict under the aiding and abetting statute, 18 U.S.C. § 2, the government need only prove that the defendant associated himself with the unlawful venture, participated in it as something he wished to bring about, and by his action sought to make the activity succeed." *United States v. Clark*, 980 F.2d 1143, 1146 (8th Cir. 1992) (citation omitted).

Several witnesses testified Wantland controlled his wife, Keisling. According to other testimonies, Wantland was in overall charge of the construction companies, making all business decisions, including how much money the company should request in the draws. Evidence also showed that Wantland had previous experience in the construction industry (while Keisling had none), purchased personal items with the loan money, and fled when the bank learned of the altered invoices and uncashed checks.

Accordingly, the evidence sufficiently supports aiding and abetting bank fraud beyond a reasonable doubt.

Keisling appeals her conviction for bank fraud, but claims that, while the evidence may show a general scheme to defraud, the government did not prove a scheme to defraud by false or fraudulent representations. Specifically, Keisling asserts that the government failed to demonstrate that the bank received fabricated or altered invoices and uncashed checks *before* the bank released the proceeds, thus no disbursements were paid based upon Keisling's false representations.

Keisling's real complaint is that the district court submitted on both theories of fraud, when one was not supported by the evidence. The court, however, did not err by instructing the jury on both theories. The Supreme Court has held that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive,

. . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970); *see also Griffin v. United States*, 502 U.S. 46, 58-60 (1991); *United States v. Wilkinson*, 124 F.3d 971, 976 (8th Cir. 1997), *cert. denied*, 522 U.S. 1133 (1998); *United States v. Clausen*, 792 F.2d 102, 105 (8th Cir.), *cert. denied*, 479 U.S. 858 (1986); *United States v. Mohr*, 728 F.2d 1132, 1135 (8th Cir.), *cert. denied*, 469 U.S. 843 (1984). "Indeed, if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." *Griffin*, 502 U.S. at 60.

Despite Keisling's assertion, the evidence sufficiently supports either theory of culpability. In this case it does not matter that some documents were submitted after the draw requests were paid. As Keisling points out in her brief, two witnesses testified that she admitted to submitting altered invoices to the bank, after the last draw had been issued. The bank CEO responsible for administering the loans also stated that, while the first few draws were paid without supporting documents, Keisling began providing invoices and checks to vendors when making draw requests. Another bank employee, testified that Keisling submitted draw requests to the bank, typically accompanied by a C-Builders invoice and a B-Builders invoice, along with checks from C-Builders to B-Builders indicating B-Builders had been paid. The employee testified that had she known the checks were never cashed, she would not have approved the draw requests. According to an FBI agent, the checks submitted to the bank were never cashed, and appeared to have been submitted over a period of time, and not all at once, as Keisling suggests.

Because a reasonable jury could have found Keisling guilty beyond a reasonable doubt for either a scheme to defraud or a scheme to obtain money by false or fraudulent representations, the conviction is affirmed.

Keisling also appeals her sentence, claiming that the district court violated the Sixth Amendment by enhancing the sentence based on judicially found facts. Over her objection invoking *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), the district court adopted the facts in the presentence report as to the amount of loss to the bank, and more-than-minimal planning. Following the then-mandatory guidelines, the court – determining the range as 21 to 27 months – sentenced Keisling to 21 months.

Keisling's sentence violates the Sixth Amendment by including enhancements based on facts neither found by a jury beyond a reasonable doubt nor admitted by her. *See United States v. Booker*, 125 S. Ct. 738, 756 (2005). The Supreme Court "expect[s] reviewing courts to apply ordinary prudential doctrines," when reviewing Sixth Amendment error. *Id.* at 769. Because Keisling preserved her objection, this court reviews for harmless error. *See United States v. Pirani*, 406 F.3d 543, 549-50 (8th Cir. 2005) (en banc). The Federal Rules of Criminal Procedure require: "Any error, defect, irregularity, or variance which does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). This "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993) (discussing the harmless error doctrine, requiring the government prove no prejudice beyond a reasonable doubt).

In this case, the district court gave an identical alternative sentence "in the event that the federal sentencing guidelines would at some later point be determined to be invalid and unconstitutional." The judge twice characterized his alternative sentence as "an alternative determination within the statutory range that is permitted under the law without adherence, without at least strict adherence to the sentencing guidelines." The court concluded that the alternative sentence was "pursuant to the statutory scheme which would from a practical effect have the same result." Because this court finds the *Booker* error harmless beyond a reasonable doubt, the sentence is affirmed.

Therefore, this court affirms Wantland's conviction, and Keisling's conviction and sentence.

_____