# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1098

_____

United States of America

*Plaintiff - Appellant*

v.

John R. Steffen

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 15, 2012
Filed: August 9, 2012

_____

Before SMITH, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

John R. Steffen was indicted on two counts of bank fraud in violation of 18 U.S.C. § 1344, one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of wire fraud in violation of 18 U.S.C. § 1343. Steffen filed a motion to

dismiss the indictment for failure to state an offense. The district court[1] found that a false representation is a required element of a federal fraud offense and that the indictment failed to allege any express misrepresentation by Steffen. The district court further held that "absent a statutory, fiduciary, or independent disclosure duty, mere silence (nondisclosure) is insufficient to state a fraud claim" under any of the three charged offenses and dismissed the indictment. The Government now appeals, arguing that the indictment sufficiently alleged a scheme to defraud. We affirm.

## I. Background[2]

Steffen was the owner of Pyramid Construction, Inc. and MB Lofts, LLC, two Missouri corporations that were in the construction business. These companies were involved in numerous residential and commercial real estate projects in St. Louis, Missouri. One of MB Lofts' major projects was the redevelopment and rehabilitation of the Metropolitan Building at 500 North Grand Boulevard in St. Louis. As part of the financing for this project, MB Lofts applied for and received $1,424,818 in tax credits from the State of Missouri. In May 2007, Steffen and MB Lofts pledged these tax credits ("the collateral") as security for a loan from The Business Bank of St. Louis ("the Bank"). Steffen, individually and on behalf of MB Lofts, executed a written "Pledge and Security Agreement" ("the security agreement"). In Section 4 of the security agreement, Steffen promised that any sale of the collateral would be

---

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri.

[2] "In reviewing the sufficiency of an indictment, we accept the government's allegations as true, without reference to allegations outside the indicting document." United States v. Farm & Home Sav. Ass'n, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991). Accordingly, the facts set forth in this opinion are drawn from the indictment at issue in this appeal.

executed under the terms of an attached form sale agreement and that the Bank would be provided with a draft of any such agreement prior to a sale. In Section 5 of the security agreement, Steffen and MB Lofts granted their interest in any proceeds from a sale of the collateral to the Bank. Section 7(c) of the security agreement required Steffen and MB Lofts to obtain the prior written consent of the Bank before selling or otherwise disposing of the collateral. Steffen also executed a "Construction Loan Agreement" ("loan agreement") with the Bank. Section 10.21 of the loan agreement specified a deposit account with the Bank that should receive the proceeds in the event that the collateral was sold.

Between May 2007 and March 2008, MB Lofts received $1,115,633 from the Bank pursuant to the loan agreement. In December 2007, Steffen, acting on behalf of MB Lofts, sold a substantial portion of the collateral to a third party without sending a draft of the agreement to the Bank or obtaining the Bank's prior approval. Steffen then deposited the proceeds of the sale into an account with another bank instead of the deposit account with the Bank as specified by the loan agreement. On March 7, 2008, MB Lofts requested an advance on the loan in the amount of $5,739.45, and the Bank wired the funds four days later. Shortly thereafter, the Bank discovered the sale of the collateral. MB Lofts ultimately defaulted on the loan.

A. The First Indictment

On July 8, 2010, the Government charged Steffen with bank fraud in a one-count indictment ("the first indictment"). The first indictment alleged that Steffen executed a scheme to defraud a financial institution under 18 U.S.C. § 1344 by selling the collateral he had previously pledged to the Bank for its loan. Steffen filed a motion to dismiss the first indictment for failure to state an offense, arguing that the Government failed to identify any express misrepresentations from Steffen to the Bank. The Government argued that Steffen's failure to tell the Bank about his conversion of the collateral was a material omission that demonstrated a scheme to

defraud the Bank. The district court noted that the Government "affirmatively admitted several times at oral argument that defendant made no misrepresentations." United States v. Steffen, 753 F. Supp. 2d 903, 906 (E.D. Mo. 2010) (emphasis omitted). The court then relied on United States v. Ponec, 163 F.3d 486 (8th Cir. 1998), among other cases, to conclude that "nondisclosure or silence is insufficient to state a bank fraud claim." Steffen, 753 F. Supp. 2d at 911. The court acknowledged, however, that nondisclosure might be part of a scheme to defraud if there were "some independent legal duty to disclose," but found that the first indictment alleged no such duty owed by Steffen. Id. at 908. Accordingly, the court dismissed the first indictment. Id. at 904.

## B. The Second Indictment

On April 5, 2011, the Government filed a second indictment ("the indictment"), which is the subject of this appeal. The indictment elaborated on the Government's original theory of the case by charging Steffen with four counts: bank fraud in violation of 18 U.S.C. § 1344 for the sale of the collateral without first providing the Bank with a draft of the sale agreement (Count 1); mail fraud in violation of 18 U.S.C. § 1341 for using UPS to send the State of Missouri a form reflecting Steffen's transfer of the collateral (Count 2); wire fraud in violation of 18 U.S.C. § 1343 for the transfer of the funds used to purchase the collateral (Count 3); and another violation of 18 U.S.C. § 1344 for the March 7, 2008 draw request to the Bank (Count 4). This time, the Government alleged that Steffen's sale of the collateral and his failure to carry out his disclosure duties under the security agreement amounted to a scheme to defraud for the purposes of the bank, mail, and wire fraud statutes. Count 4 was based on the theory that Steffen's draw against the loan after selling the collateral amounted to an implied false representation under the terms of the security agreement that the collateral was secure.

Once again, Steffen filed a motion to dismiss the indictment for failure to state an offense. Steffen argued that the indictment "simply alleged greater detail regarding the same facts" as the first indictment and that the Government again "fail[ed] to allege the requisite affirmative misrepresentation to the bank." The district court agreed and dismissed the indictment. The court acknowledged that, unlike the first indictment, the second indictment alleged breaches of Steffen's duty to disclose the sale of the collateral under the terms of the security agreement. However, the court concluded that "in order for a fraudulent disclosure to be actionable fraud (either criminal or civil) the duty to disclose must be independent of any duty imposed by the contract. . . . [T]he disclosure duty must be imposed by statute or by the existence of a fiduciary relationship." Finding no duty to disclose beyond the contractual one imposed by the security agreement, the court found that Steffen's "mere silence (nondisclosure) [was] insufficient to state a fraud claim" under any of the four counts.

The Government filed a motion for reconsideration, arguing that the indictment alleged more than mere nondisclosure by demonstrating "active concealment, implied misrepresentations, and fraudulent omissions that together establish a 'scheme to defraud.'" The Government also argued that the court's reliance on Ponec was misplaced because Ponec's language indicating that a scheme to defraud requires an affirmative misrepresentation was either dicta or in conflict with prior opinions of this court. The motion was granted, and after extensive briefing and oral argument, the district court once again dismissed the indictment. The court held that the language in Ponec was not dicta and controlled the outcome. It also reiterated that "[e]ven in the circuits that do not have the Ponec requirement of an affirmative misrepresentation, courts have required active concealment or an independent duty to disclose in order to state a bank fraud claim." The district court concluded that the indictment failed to allege any non-contractual duty to disclose or any acts of concealment by Steffen.

-5-

## II. Analysis

We review de novo a district court's dismissal of an indictment for failure to state an offense. United States v. Hirsch, 360 F.3d 860, 863 (8th Cir. 2004). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993). The central issue in this case is whether the indictment sufficiently alleged that Steffen engaged in a "scheme or artifice to defraud" the Bank and thus contained all of the essential elements of mail, wire, and bank fraud. See 18 U.S.C. §§ 1341, 1343, 1344; United States v. Onwumere, 530 F.3d 651, 653 (8th Cir. 2008) (elements of mail fraud); United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007) (elements of wire fraud); United States v. Jenkins, 210 F.3d 884, 886 (8th Cir. 2000) (elements of bank fraud).[3]

The Government argues that the indictment sufficiently stated offenses under the federal fraud statutes. The Government's argument can be divided into two parts. First, the Government contends that under the federal fraud statutes, an affirmative misrepresentation is not a required element for alleging a scheme to defraud. Second, the Government argues that the indictment sufficiently alleged "omissions from duties of disclosure, active concealment, or double-pledging of collateral" and that this

---

[3] "The bank fraud statute was modeled after the mail and wire fraud statutes, and this court has stated that the bank fraud statute should be given the same broad construction as those statutes." United States v. Rimell, 21 F.3d 281, 287 (8th Cir. 1994). Indeed, we have held that "the case law interpreting [sections 1341 and 1343] should be used to interpret section 1344." United States v. Solomonson, 908 F.2d 358, 364 (8th Cir. 1990). Accordingly, our analysis of when an indictment sufficiently alleges a scheme to defraud for the purposes of any one of the mail, wire, or bank fraud statutes is applicable to all three statutes.

conduct may establish a scheme to defraud for the purposes of the federal fraud statutes. We address each of these arguments in turn.

## A. Affirmative Misrepresentations

On its face, the bank fraud statute provides two independent avenues for establishing an offense:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Subsection (2) expressly requires "false or fraudulent pretenses, representations, or promises," and we have also concluded that it "appears to require 'some loss to the institution, or at least an attempt to cause a loss.'" United States v. Staples, 435 F.3d 860, 867 (8th Cir. 2006) (quoting Ponec, 163 F.3d at 488). In contrast, subsection (1) requires only that the defendant have engaged in some scheme or artifice to defraud. The indictment charged Steffen with violating both subsections. The mail and wire fraud statutes are not divided into subsections, but they offer the same two avenues for proving an offense.[4] The Government has

---

[4] The mail fraud statute criminalizes the use of the Postal Service or a "private or commercial interstate carrier" in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341. The wire fraud statute criminalizes the use of "wire, radio, or television communication in interstate or foreign commerce" in furtherance of "any scheme or artifice to defraud, or for obtaining

repeatedly conceded that Steffen did not make any affirmative misrepresentations to the Bank. Thus, the question is whether an indictment charging a defendant with a scheme or artifice to defraud under the federal fraud statutes must allege that the defendant made an affirmative misrepresentation.

The district court answered this question in the affirmative, relying on Ponec to hold that: "the existence of affirmative misrepresentations is a necessary element of a scheme to defraud." In Ponec, the defendant was found guilty of bank fraud under section 1344 for taking checks payable to the order of his employer and depositing them in his personal account. 163 F.3d at 487. Ponec used blank deposit slips that only contained his account number so that bank tellers processing the transactions failed to notice that the checks were being deposited into the wrong account. Id. Ponec argued that the Government's indictment failed to state an offense under section 1344 because "he did not make any false statement to the bank, so there could be no scheme to defraud." Id. at 488. This court accepted the premise of Ponec's argument: "We grant that the government needed to prove that Mr. Ponec deliberately made false representations to the bank. Otherwise, there would be no scheme or artifice to defraud." Id. at 489. We then found that seven of the alleged counts were justified because Ponec's act of writing his own account number on the blank deposit slips amounted to "falsely representing that he had the right to put these checks into his own account." Id.

Since Ponec was decided, we have cited it on two occasions for the proposition that a scheme to defraud requires some showing that the defendant made an affirmative misrepresentation. See United States v. Rubashkin, 655 F.3d 849, 862

money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343.

(8th Cir. 2011), <u>petition for cert. filed</u>, 80 U.S.L.W. 3622 (U.S. Apr. 2, 2012) (No. 11-1203); <u>Staples</u>, 435 F.3d at 867. District courts in this circuit have also relied on <u>Ponec</u> for this proposition. <u>See, e.g.</u>, <u>Kaplan v. Evans</u>, No. 4:11-CV-00153, 2011 WL 6740427, at *3 (E.D. Mo. Dec. 22, 2011); <u>United States v. Nieman</u>, 265 F. Supp. 2d 1017, 1032 (N.D. Iowa 2003). Nevertheless, the Government contends that the district court's reliance on <u>Ponec</u> was in error because <u>Ponec</u>'s language regarding the need for false representations was dicta. We decline to address this contention because we agree with the Government's argument in the alternative, which is that cases preceding <u>Ponec</u> in this circuit had already established that a scheme to defraud under section 1344(1) does not require an affirmative misrepresentation.

The Government relies on <u>United States v. Britton</u>, 9 F.3d 708 (8th Cir. 1993) (per curiam), to argue that false representations are not required when alleging a scheme to defraud under section 1344(1). In <u>Britton</u>, the defendant purchased a utility trailer for $1,100 and transferred the title to his sister-in-law, Darlene Stratton. 9 F.3d at 709. Stratton then applied for a bank loan to purchase the trailer from Britton and pledged the trailer as collateral. In her loan application, Stratton falsely represented to the bank that she had purchased the trailer from Britton for $25,000. Britton obtained appraisals of larger trailers that were valued at $25,000, and Stratton presented these to the bank. When Stratton defaulted on the loan, the bank attempted to find the trailer, and Britton concealed its location and ultimately transferred it without its serial number. Britton was convicted of bank fraud under section 1344. <u>Id.</u> On appeal, he argued that there was insufficient evidence to support his conviction because the Government never showed that he made false representations to the bank. <u>Id.</u> We upheld Britton's conviction, holding that: "Contrary to Britton's view, the Government did not have to show Britton made false representations." <u>Id.</u>

We added that a scheme to defraud violates section 1344 "if the scheme 'is a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community.'" Id. (citation omitted).

Steffen contends that Britton is dicta because the facts of the case reveal that Britton was obviously involved in a scheme by which his sister-in-law made misrepresentations to the bank and Britton assisted in and actively concealed the fraud. According to Steffen, the Britton court was not actually endorsing the position that the Government may successfully allege bank fraud when it admits that no misrepresentations were made by any party involved in the alleged scheme to defraud. Instead, he argues that the Government did not have to show that Britton personally made false representations only because another participant in the same scheme to defraud made the requisite false representations.

After a closer examination of Britton, we reject Steffen's argument and find that Britton established that a scheme to defraud does not require false representations. We acknowledge that Britton involved false representations by another party involved in the particular scheme to defraud. However, in Britton we relied on United States v. Schwartz, 899 F.2d 243, 246 (3d Cir. 1990), for our holding that the Government did not have to show that Britton himself made a false representation. In Schwartz, the Third Circuit analyzed the subsections of section 1344 and unequivocally held that "a person may commit a bank fraud without making false or fraudulent pretenses, representations, or promises, as this is the 'plain meaning' of the statute." Schwartz, 899 F.2d at 246. The language in Britton, when read alongside our reliance on Schwartz, demonstrates that we intended to adopt the reasoning of the Third Circuit, and indeed, the reasoning of every other circuit that

-10-

has addressed this issue[5] in finding that section 1344(1) does not require an affirmative misrepresentation.

We find further support for this conclusion in United States v. Sheahan, 31 F.3d 595 (8th Cir. 1994), and United States v. Honarvar, 477 F.3d 999 (8th Cir. 2007). In Sheahan, we applied Britton's language to a defendant charged with violating section 1344 who argued that his indictment insufficiently alleged criminal conduct on the facts of his case. Sheahan, 31 F.3d at 600. Sheahan was allowed to write checks on closed accounts by a bank official without the knowledge of the bank's board of directors and in violation of the bank's generally accepted practices. Sheahan also double-pledged collateral as security for a loan from the bank that had been previously pledged for a loan from a different bank. Sheahan argued that his conduct did not demonstrate a scheme to defraud under section 1344. Id. at 600-01. While reciting the elements of a scheme to defraud, we noted that "[t]he government

_____

[5] See United States v. LeDonne, 21 F.3d 1418, 1425 (7th Cir. 1994) ("In applying the disjunctive analysis to bank fraud, courts have required proof of a misrepresentation only to convict for a violation of § 1344(2)."); United States v. Ragosta, 970 F.2d 1085, 1089 (2d Cir. 1992) ("We conclude that . . . § 1344(1) does not require proof of a misrepresentation."); United States v. Stone, 954 F.2d 1187, 1190 (6th Cir. 1992) (following the "number of courts" that "have not required an affirmative misstatement to support a conviction" under section 1344(1)); United States v. Fontana, 948 F.2d 796, 800 (1st Cir. 1991) ("[W]e do not agree . . . that the charge [under section 1344] required an additional showing of misrepresentation."); United States v. Celesia, 945 F.2d 756, 758-59 (4th Cir. 1991) ("[O]ne may commit a bank fraud under Section 1344(1) by defrauding a financial institution, without making the false or fraudulent promises required by Section 1344(2). Thus, an indictment which . . . tracks the language of both provisions is not dependent on proof of the [subsection] (2) elements."); United States v. Cronic, 900 F.2d 1511, 1513-14 (10th Cir. 1990) ("The offense of a scheme to defraud focuses on the intended end result, not on whether a false representation was necessary to effect the result. Schemes to defraud, therefore, may come within the scope of [section 1344] even absent an affirmative misrepresentation.").

-11-

need not demonstrate that the defendant made false representations or that the bank was actually defrauded." Id. at 600.

In Honarvar, the defendants had been convicted of bank fraud under section 1344 and of making false statements to the bank in connection with credit card applications under 18 U.S.C. § 1014. Honarvar, 477 F.3d at 999-1000. The defendants argued on appeal that the jury instructions for the bank fraud offenses subsumed the false statement offenses and thus created a double jeopardy problem. Id. at 1002. However, as we noted, and as the defendants acknowledged: "on their statutory faces, the crimes of bank fraud under 18 U.S.C. § 1344 and false statements under 18 U.S.C. § 1014 do not present a double jeopardy problem, as each contains elements not included in the other." Id. We then cited United States v. Chacko, 169 F.3d 140, 148 (2d Cir. 1999), and United States v. Dupre, 117 F.3d 810, 818 (5th Cir. 1997), for the proposition that "section 1344 bank fraud requires the distinguishing element of a scheme or artifice, while section 1014 false statement offense requires the distinguishing element of a false statement." Id. Honarvar thus strongly supports the conclusion that a scheme to defraud does not necessarily require an affirmative misrepresentation.

We therefore conclude, relying on Britton, that a scheme to defraud under section 1344(1) does not require an affirmative misrepresentation. We note that this conclusion appears to fit with earlier cases in our circuit addressing the requirements of the wire and mail fraud statutes. See United States v. Clausen, 792 F.2d 102, 105 (8th Cir. 1986) ("[A] scheme to defraud need not include false representations to violate the wire fraud statute."); United States v. McNeive, 536 F.2d 1245, 1249 n.10 (8th Cir. 1976) ("No misrepresentation of fact is required [under section 1341] if the scheme is reasonably calculated to deceive persons of ordinary prudence."). Accordingly, it does not matter if Ponec's conclusions regarding the necessity of an affirmative misrepresentation are dicta. To the extent that Ponec conflicts with Britton, we must follow Britton, as it was the earlier of the two cases. See Mader v.

-12-

United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("[W]hen faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'" (citation omitted)).

## B. Sufficiency of the Indictment

Because we find that a scheme to defraud under sections 1341, 1343, and 1344(1) does not require affirmative misrepresentations, we now examine whether the indictment alleges conduct by Steffen that constitutes a scheme to defraud. "An indictment is normally sufficient if its language tracks the statutory language." United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008). However, where an indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes, it must specify facts "not merely in the general words of the statute, but with such reasonable particularity . . . as will . . . apprise [the defendant], with reasonable certainty, of the nature of the accusation . . . and as will enable the court to say that the facts stated are sufficient in law to support a conviction." Brown v. United States, 143 F. 60, 62 (8th Cir. 1906) (involving an indictment alleging a "scheme or artifice to defraud" under the federal mail fraud statute). See also Stewart v. United States, 119 F. 89, 94 (8th Cir. 1902) (holding that an indictment for mail fraud makes it "incumbent upon the pleader to describe the scheme or artifice to defraud which had been devised, with such certainty as would clearly inform the defendants of the nature of the evidence to prove the existence of the scheme to defraud, with which they would be confronted at the trial").

"The term 'scheme to defraud' . . . is not capable of precise definition." Sheahan, 31 F.3d at 600 (citation omitted). As noted above, we have previously characterized a scheme to defraud as "a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community." Britton, 9 F.3d at 709 (citation omitted). This definition does not offer much in the way of guidance for determining when specific acts amount to criminal behavior.

-13-

However, the Supreme Court has placed some outside limits on what constitutes a scheme to defraud under sections 1341, 1343, and 1344, by finding that these statutes must be interpreted with an eye toward the common-law understanding of fraud. See Neder v. United States, 527 U.S. 1, 20-22 (1999). In order to determine when acts may evidence a scheme to defraud in the absence of an express misrepresentation, we find the Fourth Circuit's conclusions in United States v. Colton, 231 F.3d 890 (4th Cir. 2000), to be instructive:

> At common law, fraud has not been limited to those situations where there is an affirmative misrepresentation or the violation of some independently-prescribed legal duty . . . . Rather, even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information.
> Thus, fraudulent concealment—without any misrepresentation or duty to disclose—can constitute common-law fraud. This does not mean, however, that simple nondisclosure similarly constitutes a basis for fraud. Rather, the common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence. Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does.

Colton, 231 F.3d at 898-99 (citations and quotation marks omitted).

Even if the district court erred in its reliance on Ponec, it also took the precaution of addressing the Government's arguments with reference to common-law interpretations of "a scheme to defraud" and authority from other circuits, including

-14-

Colton. The court dismissed the indictment, finding that it alleged "mere silence" by Steffen and that Steffen was under no "independent legal duty to disclose" the sale.

On appeal, the Government challenges these conclusions, arguing that the indictment sufficiently alleged a scheme to defraud under any of the four following theories: (1) double-pledging; (2) acts of concealment; (3) omissions from an independent duty to disclose; and (4) an implied misrepresentation based on a contractual agreement. We address each of these arguments in turn.

*1. Double-Pledging*

The Government contends that Steffen's sale of the collateral while it was pledged to the Bank amounts to double-pledging, an act we have recognized to be a violation of section 1344. See Sheahan, 31 F.3d at 601 ("[E]vidence of double pledging, itself, is enough to establish a section 1344 violation"). The Government argues that Steffen's actions are sufficiently similar to the criminal conduct in Sheahan and United States v. Matousek, 894 F.2d 1012 (8th Cir. 1990), to support an indictment for a scheme to defraud under a double-pledging theory.

In Sheahan, the defendant pledged collateral as security for a loan that had already been pledged for a previous loan at a different bank. Sheahan, 31 F.3d at 601. In Matousek, the defendant pledged duplicate titles for vehicles that had already been sold as collateral for a loan. Matousek, 894 F.2d at 1012-13. These actions inherently required misrepresentations to the banks involved because when the defendants pledged their collateral as security, they falsely represented that they held unencumbered title to the collateral. Indeed, in Matousek, we recognized that the defendant "misrepresented the status of his inventory and the Bank surrendered good titles in exchange for worthless titles." Id. at 1014. In contrast, Steffen never misrepresented the status of his collateral when he pledged it to the Bank; the tax credits had not already been sold or pledged to another lender at the time he entered

-15-

into the security agreement with the Bank. And after he sold the collateral to a third party, he was silent as to its status. This was undoubtedly a breach of contract,[6] but it does not fit the framework of Sheahan or Matousek. Accordingly, we find that the facts set forth in the indictment failed to allege the offense of double-pledging.

## 2. Acts of Concealment

As the Fourth Circuit in Colton and other courts have recognized, "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent the other party from acquiring material information'" may demonstrate a scheme to defraud under sections 1341, 1343, and 1344(1). Colton, 231 F.3d at 898 (citation and alteration marks omitted). See also Neder, 527 U.S. at 22 (noting that "the well-settled meaning of 'fraud'" includes "concealment of material fact" (emphasis omitted)); McNeive, 536 F.2d at 1251 (reversing a conviction under section 1341 because there was no evidence that the defendant "materially misrepresented any facts . . . or that he actively concealed his scheme"). The Government argues that Steffen acted to conceal material facts from the Bank by: failing to inform the Bank of the sale of the collateral; depositing funds from the sale into his personal bank account as opposed to the account specified in section 10.21 of his loan agreement with the Bank; and drawing against the loan, which impliedly represented that no sale had taken place.

However, the Fourth Circuit also observed that the common law and the courts have historically drawn a distinction between "passive concealment—mere nondisclosure or silence—and active concealment, which involves the requisite intent to mislead by creating a false impression or representation." Colton, 231 F.3d at 899.

---

[6] Indeed, the record reflects that the Bank filed a civil suit alleging breach of contract against Steffen, Pyramid Construction, and MB Lofts in state court shortly after discovering Steffen's sale of the collateral. The case was settled, and the Bank recovered $775,000 of the proceeds it lent to MB Lofts.

-16-

See also Stewart v. Wyo. Cattle Ranche Co., 128 U.S. 383, 388 (1888) (noting that "mere silence is quite different from concealment" and that silence must be accompanied by "concealment or suppression" in order to be equivalent to a false representation). The latter consists of "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter." Colton, 231 F.3d at 901.

We find that the indictment fails to allege any acts to conceal. Rather, the Government alleges only nondisclosure. According to the facts set forth in the indictment, Steffen sold the collateral and deposited the proceeds in his personal account. By the Government's own admission, the indictment contained no allegations of acts tending to show that Steffen entered into the loan agreement with the intention of defrauding the Bank by later selling the collateral. Indeed, the Government stated that "[t]he indictment is not premised on that theory," and expressly agreed that the indictment did not allege that any scheme to defraud existed at the outset of the loan agreement. The indictment also alleged no actions undertaken by Steffen to hide the sale of the collateral from the Bank's discovery. See, e.g., Britton, 9 F.3d at 709 (noting that the defendant concealed the location of the collateral and took steps to transfer it so as to avoid detection). When he issued a draw request to the Bank, Steffen did not make reference to the collateral or attempt to hide the fact that he had sold the collateral. Throughout the indictment, the only alleged "act" to conceal was Steffen's silence about the sale to the Bank, which is insufficient to show a scheme to defraud.

### 3. Omissions from an Independent Legal Duty to Disclose

The court in Colton implied that silence or nondisclosure could be fraudulent if it violated a "fiduciary, statutory, or other independent legal duty to disclose material information." Colton, 231 F.3d at 898. The Government relies on this to argue that the security agreement between Steffen and the Bank gave rise to an

-17-

independent legal duty to disclose the sale of the security. Specifically, the Government relies on sections 5 and 7(c) of the security agreement, in which Steffen promised to send a draft of any sale agreement to the Bank and to obtain the Bank's approval before a sale. The Government further contends that Steffen's silence breached this duty and amounted to a scheme to defraud by material omission.

The Government relies on United States v. Autorino, 381 F.3d 48 (2d Cir. 2004), to argue that the failure to disclose information pursuant to a contractual agreement may demonstrate a scheme to defraud on its own. In Autorino, an indictment charging violations of sections 1343 and 1344 was found sufficient where it alleged that the defendant failed "to advise the FDIC, as required by [a] pledge agreement, of the subsequent cancellation of the pledged [stock] certificate, the issuance of a replacement certificate, and the sale of the stock represented by the certificate." Id. at 52. However, the indictment also alleged that Autorino knowingly made false statements to the issuer of the stock certificate in connection with the breach of the pledge agreement by claiming that the certificates had been "lost or destroyed." Id. at 50. The certificates were cancelled and replaced, and Autorino then pledged one of the cancelled certificates to the FDIC. Id. Unlike in Autorino, Steffen's breach of the security agreement was not accompanied or preceded by express misrepresentations, and we therefore find Autorino inapplicable to the instant case.

Colton indicates that nondisclosure in the face of an independent legal duty to disclose may support a criminal fraud prosecution, but we agree with the district court that "in order for a fraudulent disclosure to be actionable fraud (either criminal or civil) the duty to disclose must be independent of any duty imposed by the contract." In the civil context, "'[a] fraud claim is permitted only if it arises from acts that are separate and distinct from the contract.'" Dubinsky v. Mermart, LLC, 595 F.3d 812, 820 (8th Cir. 2010) (quoting O'Neal v. Stifel, Nicolaus & Co., 996 S.W.2d 700, 702 (Mo. Ct. App. 1999)). If the same rule did not apply in the criminal context, every

breach of a bank loan agreement could give rise to criminal fraud prosecution. See United States v. Dowling, 739 F.2d 1445, 1450 (9th Cir. 1984) (holding that nondisclosure may form the basis of a scheme to defraud only where there is a fiduciary or explicit statutory duty to disclose and further noting that "[t]o hold otherwise . . . would have the potential of bringing almost any illegal act within the province of the mail fraud statute"), rev'd on other grounds, 473 U.S. 207 (1985). Here, the Government does not argue that Steffen was bound by a fiduciary or statutory duty to disclose. Rather, the alleged omissions are indistinguishable from breaches of Steffen's contractual duties under the security agreement. Accordingly, the indictment fails to allege a scheme to defraud based on this theory.

*4. Implied Misrepresentation*

The Government's final theory as to why the indictment alleges a scheme to defraud is based on Steffen's draw request to the Bank on March 7, 2008. The Government alleges that Steffen's draw request implicitly represented that all of the representations and warranties in the security and loan agreements were true and correct in all material respects. The Government alleges that this representation was false because Steffen had already violated the agreements by selling the collateral.

Once again, we find no authority to support finding a misrepresentation imputed by contract when the defendant is silent and does not suppress or conceal his breach of the contract. As discussed above, Steffen's draw request was unaccompanied by any reference to the collateral; he made no false representation, submitted no misleading or falsified documents, and took no affirmative steps to conceal that he had sold the collateral. This distinguishes Steffen's case from others where courts have found a draw request sufficient to show a defendant's scheme to defraud. See, e.g. United States v. Wantland, 135 F. App'x 893, 895-96 (8th Cir. 2005) (unpublished per curiam) (upholding convictions for bank fraud related to the submission of draw requests where the defendants submitted fabricated and altered

-19-

invoices to support the requests).  Accordingly, we find that Steffen's breach of the security agreement and subsequent silence do not demonstrate a scheme to defraud.

## III. Conclusion

For the foregoing reasons, we find that the indictment failed to sufficiently allege a scheme to defraud under the mail, wire, and bank fraud statutes.  We therefore affirm the district court's dismissal of the indictment for failure to state an offense.

_____