# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1096
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Alan Welker

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: October 18, 2022
Filed: July 27, 2023
_____

Before COLLOTON, KELLY, and KOBES, Circuit Judges.
_____

KELLY, Circuit Judge.

Michael Welker was indicted for committing mail and wire fraud against his spouse and National Life Insurance. He moved to dismiss the indictment for failure to state an offense, which the district court[1] denied. Welker appeals, and we affirm.

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

# I.

"In reviewing the sufficiency of an indictment, we accept the government's allegations as true, without reference to allegations outside the indicting document."[2] United States v. Steffen, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012) (quoting United States v. Farm & Home Sav. Ass'n, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991)). The following background is therefore drawn from the indictment in this case.

Welker was married to R.W, and the two had a joint bank account at Bankers Trust, which Welker monitored and controlled. Welker and R.W. also had their own personal accounts at different banks.

In September 2014, R.W. purchased a life insurance policy worth $500,000 from Transamerica Corporation. R.W. paid the insurance premiums for this policy from her personal bank account. Around the same time, Welker purchased a second life insurance policy for R.W. from National Life—without R.W.'s knowledge or consent. Welker forged R.W.'s signatures on the National Life policy documents and induced R.W. into taking a physical exam by telling her it was for the Transamerica policy.

In 2015, R.W. requested a critical illness accelerated payout from Transamerica.[3] Welker told R.W. that the Transamerica payout would only be $47,428, when it was actually $96,166.57. Once the full payout was deposited into R.W. and Welker's joint Bankers Trust account, Welker wrote a check to R.W. for $47,428 and wrote another check to himself for the remainder of the payout.

Welker then requested an accelerated payout from National Life, again without R.W.'s knowledge or consent. National Life wired a payout of $173,050 to

---

[2]For this reason, we decline Welker's request that we take judicial notice of documents outside the indictment.

[3]R.W. was diagnosed with cancer in 2015.

Welker and R.W.'s joint Bankers Trust account. Welker used the payout to purchase cashier's checks that he wrote to himself.

Welker and R.W. later divorced, and Welker's disbursements to himself from the insurance payouts were eventually discovered. In September 2020, Welker was indicted on one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of wire fraud, in violation of 18 U.S.C. § 1343. The indictment alleged that Welker had a "scheme and artifice to defraud R.W. and National Life, and to obtain money from R.W. and National Life." The indictment described Welker's misrepresentations to R.W., the forged National Life policy documents, and Welker's disbursements to himself.

Welker moved to dismiss the indictment, which the district court denied. Welker then conditionally pleaded guilty to the wire fraud count, reserving the right to challenge the denial of his motion to dismiss. The district court sentenced Welker to five years of probation. Welker now appeals, arguing that the indictment failed to allege a scheme to defraud R.W. and National Life.

II.

We review de novo a district court's denial of a motion to dismiss an indictment for failure to state an offense, accepting the allegations in the indictment as true and asking whether they can form the basis of the charged offense. United States v. Hansmeier, 988 F.3d 428, 436 (8th Cir. 2021). An indictment is generally sufficient "unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009) (quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008)). Whether an indictment sufficiently states an offense, then, depends on the elements of the charged offense. Hansmeier, 988 F.3d at 436. "A slightly greater level of detail is required for" a mail or wire fraud indictment, id. at 436, which must "specify facts . . . with such reasonable particularity as will apprise the defendant, with reasonable certainty, of the nature of

the accusation and as will enable the court to say that the facts stated are sufficient in law to support a conviction." Steffen, 687 F.3d at 1113 (cleaned up) (quoting Brown v. United States, 143 F. 60, 62 (8th Cir. 1906)).

The federal mail fraud and wire fraud statutes criminalize "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341 (mail fraud); id. § 1343 (wire fraud).[4] "Construing that disjunctive language as a unitary whole," the Supreme Court has interpreted the fraud statutes as prohibiting "only deceptive schemes to deprive the victim of money or property." Kelly v. United States, 140 S. Ct. 1565, 1571 (2020) (cleaned up) (quoting McNally v. United States, 483 U.S. 350, 356 (1987)); see Louper-Morris, 672 F.3d at 555 (noting that the elements of mail or wire fraud are "(1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail [or wire] would be used, and (4) that the mail [or wire] was used in furtherance of some essential step in the scheme" (cleaned up and citation omitted)).

The indictment here alleged specific facts to support each element of the mail and wire fraud offenses for which Welker was charged. It alleged that Welker engaged in "a scheme to defraud" R.W. of the insurance payouts by lying to her about the Transamerica payout, applying for a National Life policy without her knowledge, forging policy documents, inducing her to get a physical exam, and disbursing the insurance payouts to himself. The indictment included allegations about Welker's intentional concealment of material information from and misrepresentations to R.W., supporting that he had the "intent to defraud" her. And it alleged that he used the mail and wire in furtherance of his scheme. See Louper-Morris, 672 F.3d at 555. These allegations were sufficient to apprise Welker of the nature of the accusations against him and to enable the district court to determine

---

[4]The "elements of wire fraud are virtually identical to mail fraud," so we discuss them here collectively as the "fraud statutes." United States v. Louper-Morris, 672 F.3d 539, 555 (8th Cir. 2021).

that the facts stated were adequate in law to support a conviction. See Steffen, 687 F.3d at 1113.

Welker argues, however, that the indictment failed to sufficiently allege a scheme to deprive R.W. of the insurance payouts because under Iowa law, the payouts were marital property to which he had "equal legal rights."[5]  In other words, Welker suggests that because the allegations in the indictment would not constitute an unlawful deprivation under Iowa law, they cannot amount to one under the federal fraud statutes.  But Welker provides no support for the proposition that an indictment must sufficiently allege a violation of state law to sufficiently state a federal mail or wire fraud offense.  See United States v. Frost, 321 F.3d 738, 740, 741 (8th Cir. 2003) (rejecting the defendant's argument that his convictions for mail and wire fraud should be overturned because his withdrawal of money from a trust account without the co-trustee's consent was not unlawful under Arkansas law); United States v. Williams, 545 F.2d 47, 50 (8th Cir. 1976) (per curiam) ("A conviction for mail fraud does not depend upon a violation of state law."); see also United States v. Louderman, 576 F.2d 1383, 1387 (9th Cir. 1978) ("[S]tate law is irrelevant in determining whether a certain course of conduct is violative of the wire fraud statute.").  And in any event, a defendant can unlawfully deprive their spouse of marital property under Iowa law, at least when done with criminal intent, even though that property is jointly owned.  See, e.g., State v. Zeien, 505 N.W.2d 498, 498 (Iowa 1993) ("Each community property owner has an equal ownership interest and, although undivided, one which the criminal law protects from unilateral nonconsensual damage or destruction by the other marital partner." (quoting People v. Kahanic, 241 Cal. Rptr. 722, 725 (Ct. App. 1987))).  We therefore do not agree with Welker that Iowa law compels the dismissal of his indictment.

_____

[5]The parties do not dispute that the insurance payouts were marital property. See Iowa Code § 598.21(5); In re Marriage of Driscoll, 563 N.W.2d 640, 643 (Iowa Ct. App. 1997) ("The trial court correctly concluded the whole life insurance, having a cash value, was obtained after the parties' marriage and is thus clearly marital property.").

-5-

The indictment charging Welker is not "so defective" that it fails to charge him for mail and wire fraud under federal law.  Hayes, 574 F.3d at 472 (quoting Sewell, 513 F.3d at 821).[6]

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[6]Because we hold that the indictment sufficiently alleged a scheme to defraud R.W., we need not address the government's alternative argument that the indictment sufficiently alleged a scheme to defraud National Life.  See United States v. Blumeyer, 114 F.3d 758, 769 (8th Cir. 1997) (explaining that where the defendants were charged with conducting a scheme to defraud two different entities, the conviction may stand so long as "any one of these . . . alternatives would support a conviction when combined with the requisite mail or wire transaction").