NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER CLEMENTS, *Appellant*.

No. 1 CA-CR 23-0224
FILED 05-23-2024

_____

Appeal from the Superior Court in Maricopa County
No. CR2018-000917-001
The Honorable Scott Minder, Judge

**AFFIRMED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Damon A. Rossi
*Counsel for Appellant*

------

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

------

**M c M U R D I E**, Judge:

**¶1**        Christopher Clements appeals his conviction and sentence for fraudulent schemes and artifices. He argues that his conduct did not satisfy the offense elements. Because there was substantial evidence to support his conviction, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        Clements has a son who lives with his mother in Oregon. The mother obtained a child support order against Clements, which was served on him in July 2014. In August 2016, the Arizona Department of Economic Security Division of Child Support Services ("Department") notified Clements that it opened a child support case in Arizona to enforce the order. From September 2016 into 2018, the Department searched for Clements's assets to satisfy the arrearages. Clements was aware of the child support order, did not formally challenge its validity, and made no payments.

**¶3**        In 2017, Clements was confined in the Maricopa County Jail on a matter unrelated to this case. To supplement the meager amenities provided in the jail, inmates have accounts funded by people outside the jail. From these accounts, inmates purchase items from the jail commissary, including food, personal hygiene products, and writing supplies. Clements wanted funds for the commissary but was concerned that money in his inmate account would be seized and applied to the outstanding child support order. He arranged for his girlfriend, Melissa Stark, to deposit money into his cellmate's account. The cellmate would then purchase commissary items selected by Clements from the funds Stark deposited.

**¶4**        It is unclear whether Clements knew or merely suspected that funds in an inmate's jail account could be taken to satisfy a child support

------

[1]        We view the facts in the light most favorable to sustaining the judgment. *State v. Watson*, 248 Ariz. 208, 211, ¶ 1, n.1 (App. 2020).

order, but that was the case. The Maricopa County Sheriff's Office notified the Department daily of all inmates having more than $50 in their accounts. The Department would compare the daily jail list to their database of open child support cases. The Department would submit a limited income withholding order to the sheriff's office if it identified an inmate who had an open child support case, was in arrears over $250, was not in a bankruptcy proceeding, and had not had money taken from their jail account within the past six months. *See* A.R.S. § 25-505. The Department would also notify the inmate that he or she had a right to contest the order under an administrative review. *See* A.R.S. § 25-505(C). Assuming no successful challenge to the order, the Department would take funds exceeding $50 from the inmate's account and apply it toward the child support order. The Department treated all deposits made to an inmate's account, regardless of source, as the inmate's income for satisfying a child support order. The names of inmates with $50 or less in their accounts were not transmitted to the Department.

**¶5**        Stark made seven deposits into Clements's cellmate's jail account over four months in 2017: one for $70 and the remaining six for amounts ranging from $15 to $50. Inmates could purchase items from the commissary every two weeks, and Stark deposited funds about every two to four weeks. The funds were spent quickly after each deposit.

**¶6**        Law enforcement discovered Clements's arrangement while monitoring his phone calls with Stark in an unrelated investigation. The State charged Clements and Stark with committing fraudulent schemes and artifices, a Class 2 felony. *See* A.R.S. § 13-2310. Stark pled guilty, and she and Clements's cellmate testified at Clements's trial under agreements with the State—a plea agreement for Stark and an immunity agreement for Clements's cellmate.

**¶7**        After the State rested its case, Clements moved for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20(a). He argued the State failed to show he received a benefit, *see* A.R.S. § 13-2310(A), because only one deposit exceeded the $50 threshold, and the State did not show that the Department would have been able to seize any money from that deposit timely. The superior court denied the motion, and Clements rested without offering evidence.

**¶8**        A jury found Clements guilty and found three aggravating circumstances proven. The superior court sentenced him to 10.5 years' imprisonment—the mitigated term for a category three repetitive offender. *See* A.R.S. § 13-703(C), (J).

**¶9**       Clements appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**DISCUSSION**

**¶10**       Clements contends the evidence does not support his conviction and that the superior court should have granted his motion for judgment of acquittal under Rule 20. We apply the same standard when considering the denial of a Rule 20 motion and a claim of insufficient evidence to support a jury verdict. *See State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014); *State v. Allen*, 253 Ariz. 306, 335, ¶¶ 69-70 (2022). Our review is confined to determining whether there is substantial evidence to support the verdict. *Pena*, 235 Ariz. at 279, ¶ 5; Ariz. R. Crim. P. 20(a)(1). "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Ellison*, 213 Ariz. 116, 134, ¶ 65 (2006) (citation omitted). "The substantial evidence required to support a conviction may be direct or circumstantial," *State v. Teagle*, 217 Ariz. 17, 27, ¶ 40 (App. 2007), and we do not reweigh the evidence to decide whether we "would reach the same conclusions as the trier of fact," *State v. Barger*, 167 Ariz. 563, 568 (App. 1990).

**¶11**       To prove Clements committed fraudulent schemes and artifices, the State had to show that he (1) "knowingly obtain[ed] any benefit" (2) "by means of false or fraudulent pretenses, representations, promises or material omissions" (3) "pursuant to a scheme or artifice to defraud." *See* A.R.S. § 13-2310(A); *see also State v. Haas*, 138 Ariz. 413, 418-24 (1983) (discussing the elements and definitions of a prior version of the statute).

**¶12**       Section 13-2310's fraud prevention is meant to "be broad enough to cover all of the varieties made possible by boundless human ingenuity." *See Haas*, 138 Ariz. at 424. Substantial evidence showed that Clements directed Stark to deposit money into his cellmate's account so Clements could use the money without risking that it would be seized for child support. We now apply the statute to this admitted plan and determine whether reasonable jurors could find Clements committed a crime.

**¶13**       The first element, that a defendant "knowingly obtain[ed] any benefit," is supported by substantial evidence. *See* A.R.S. § 13-2310(A). "'Benefit' means anything of value or advantage, present or prospective." A.R.S. § 13-105(3). Jurors were presented with evidence of Clements's

knowledge of the child support order, his concern that the Department would seize his money for child support, his plan to deposit money into his cellmate's account instead of his own, and the cellmate's purchasing of items for Clements. The jurors could reasonably find that Clements knowingly benefitted from commissary funds while avoiding the child support obligation.

¶14 Substantial evidence also supports that Clements acted under false or fraudulent pretenses. *See* A.R.S. § 13-2310(A). A fraudulent representation "may be effected by deceitful statements or half-truths or even the concealment of material facts." *Haas*, 138 Ariz. at 418. One employs a false or fraudulent pretense "by hiding or concealing the truth" to "intentional[ly] mislead[]" another, *id.* at 422, or by employing "a subterfuge, ruse, trick, or dissimulation upon another," *State v. Johnson*, 179 Ariz. 375, 377 (1994). The jury could reasonably find Clements concealed his funds by directing Stark to place them in his cellmate's account.

¶15 Finally, the evidence substantially supports that Clements acted "pursuant to a scheme or artifice to defraud." A.R.S. § 13-2310(A). A scheme or artifice to defraud is a "plan, device, or trick" that is "reasonably calculated to *deceive* persons of ordinary prudence and comprehension." *Haas*, 138 Ariz. at 423 (internal quotation marks and citations omitted). A defendant acts "pursuant to a scheme or artifice to defraud" when the defendant "devise[s] the fraudulent scheme or wilfully participate[s] in it with knowledge of its fraudulent nature." *Id.* at 418. The State presented substantial evidence that Clements knowingly devised an arrangement to conceal funds that otherwise could be applied to his child support order.

¶16 Citing *United States v. Dowling*, 739 F.2d 1445 (9th Cir. 1984), *rev'd in part on other grounds*, 473 U.S. 207 (1985), *United States v. Steffen*, 687 F.3d 1104 (8th Cir. 2012), *United States v. Colton*, 231 F.3d 890 (4th Cir. 2000), and other federal decisions, Clements argues he could not be found guilty of violating A.R.S. § 13-2310 because he had no independent duty to disclose the money Stark gave to his cellmate. We are unpersuaded.

¶17 First, the cited cases all address federal fraud statutes, which are not identical to A.R.S. § 13-2310. *See supra* ¶ 16; *see also Haas*, 138 Ariz. at 418-19 (Although § 13-2310 was adapted from the federal mail fraud statute, it has differences that could lead to distinctions in interpretation.). Second, this court has held that one may be convicted of fraudulent schemes and artifices based on an omission, even if there is no civil duty to disclose the information withheld. *See State v. Proctor*, 196 Ariz. 557, 562-63, ¶¶ 19-20 (App. 1998). In so holding, the *Proctor* court rejected the

appellant's request to follow *Dowling*. *See Proctor*, 196 Ariz. at 563, ¶ 21; *Dowling*, 739 F.2d at 1449.

¶18 Even if the construction of federal fraud statutes informs our interpretation of A.R.S. § 13-2310, federal authority distinguishes between "passive concealment—mere nondisclosure or silence," which does not give rise to criminal liability absent an independent duty to disclose, and "active concealment, which involves the requisite intent to mislead by creating a false impression or representation." *See Steffen*, 687 F.3d at 1114-15 (quoting *Colton*, 231 F.3d at 899); *see also Stewart v. Wyo. Cattle-Ranche Co.*, 128 U.S. 383, 388 (1888) ("[M]ere silence is quite different from concealment[,]" and "a suppression of the truth may amount to a suggestion of falsehood."). Here, jurors could find that Clements's scheme did not amount to "mere silence" but "active concealment" because it involved "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *See Colton*, 231 F.3d at 899.

¶19 Clements also argues that his conduct showed no intent to defraud because he did not attempt to disguise what he was doing, nor did he intend for anyone to rely on his conduct to their detriment. He emphasizes that he spoke openly about the plan on calls with Stark despite knowing those calls were recorded. Again, we find Clements's position unconvincing. Evidence was presented that inmates would not know for certain their calls were being listened to unless so informed and that the personnel needed to monitor all inmate calls "would be staggering." Thus, jurors could find that even if Clements knew the calls were recorded and did not use code language to hide the scheme, he could reasonably assume that no one would listen to his calls.

¶20 Clements's argument that he did not intend to induce reliance also fails because the intent to induce reliance is not an element of A.R.S. § 13-2310. And a defendant may be found guilty of fraudulent schemes and artifices even if no one relies on the defendant's false or fraudulent act or omission. *See* A.R.S. § 13-2310(B). It was enough for the State to show that Clements's "conduct was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Proctor*, 196 Ariz. at 562, ¶ 16. Jurors could find that Clements's arrangement was reasonably calculated to deceive the Department that he had no funds available for child support. *Cf. State v. Griffin*, 250 Ariz. 651, 654, 657, ¶¶ 3, 20 (App. 2021) (Substantial evidence supported the defendant's conviction of fraudulent schemes and artifices where he falsely identified himself as homeless to "avoid[] direct notice to his neighbors of his [sex offender] status and [to leave] discovery

of this status to their initiative or chance."); *State v. Allen*, 235 Ariz. 72, 76, ¶ 13 (App. 2014) ("[C]ircumstantial evidence of the defendant's desire for a result to occur [may be] sufficient to show intent" to defraud.).

**¶21** Clements also argues he could not be found guilty of fraudulent conduct because the money deposited by Stark never belonged to him—only to Stark and then to his cellmate. We reject this argument as well. The evidence showed that Stark intended the money for Clements, his cellmate held it for Clements's benefit, and the cellmate used the funds to purchase items for Clements. And even if we consider Clements's claim that he had no control over the funds and his cellmate bought the commissary items, it remains that Stark and the cellmate had control of the funds and participated in the scheme. *See* A.R.S. § 13-303(A)(3) (A defendant is criminally liable for an accomplice's conduct.); *id.* § 13-301(2), (3) (An accomplice solicits another person to commit an offense, aids the commission of an offense, or provides means or opportunity for another person to commit an offense.). Jurors could reasonably find Clements liable for Stark's and the cellmate's conduct in the scheme. *See id.* §§ 13-303(A)(3), 13-301(2), (3).

**¶22** By directing Stark to deposit funds into the cellmate's account instead of his own, Clements created a false or fraudulent pretense that he did not have enough funds to pay child support. But for Clements devising this arrangement, the Department would have become aware he had funds it could take and apply toward his child support liability. *Cf. Griffin*, 250 Ariz. at 656, ¶ 14 (By avoiding notice to others of his sex-offender status and location, the defendant "secured a benefit or advantage not enjoyed by other sex offender registrants."). Clements's avoidance of obvious possession and control of the funds did not prevent him from defrauding anyone; it was the essence of his fraudulent conduct. *Cf. State v. Watson*, 248 Ariz. 208, 213, ¶ 15 (App. 2020) ("By concealing his intent under the guise of the accepted, albeit unauthorized, practices of the branches in which he worked, Watson was better able to deceive the tellers into believing the fraudulent transactions were permissible.").

**¶23** For the first time in his reply brief, Clements also argues that no fraud occurred because even if Stark had deposited funds directly into his jail account, the Department could not lawfully seize them for unpaid child support. Arguments raised for the first time in a reply brief are generally waived. *See State v. Jean*, 243 Ariz. 331, 342, ¶ 39 (2018); *State v. Ruggiero*, 211 Ariz. 262, 267, ¶ 22, n.2 (App. 2005). But waiver notwithstanding, Clements's contention lacks merit.

¶24 Clements claims the Department had no right to seize money gifted to Clements by Stark because Stark's deposits were "insubstantial, noncontinuous, and irregular gifts." But this court has held that the Department may seize for child support even a one-time gift wired to an inmate account. *See State ex rel. Dep't of Econ. Sec. v. Torres*, 245 Ariz. 554, 559, ¶ 19 (App. 2018). The Department "may issue a limited income withholding order to any . . . holder of a nonperiodic or lump sum payment that is owed or held for the benefit of an obligor." A.R.S. § 25-505(A).

¶25 If Stark had deposited the funds into Clements's account, the sheriff's office would be a "holder of a nonperiodic . . . payment that is . . . held for the benefit of an obligor." *See* A.R.S. § 25-505(A); *Torres*, 245 Ariz. at 558, ¶ 13 (A nonperiodic payment is "a payment made once, or intermittently, but not 'periodically' or regularly."). So, contrary to Clements's assertion, had Stark deposited the funds into Clements's account, the Department would have had the authority to seize them for child support. *See* A.R.S. § 25-505(A); *Torres*, 245 Ariz. at 559, ¶ 19.

## CONCLUSION

¶26 We affirm Clements's conviction and sentence.

